1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
     A Limited Liability Partnership
2    Including Professional Corporations
   JUTHAMAS J. SUWATANAPONGCHED, Cal. Bar No. 266313
3  TARYN Q. MCPHERSON, Cal. Bar No. 329461
   333 South Hope Street, 43rd Floor
4  Los Angeles, California 90071-1422
   Telephone:  213-620-1780
5  Facsimile:   213-620-1398
   jsuwatanapongched@sheppardmullin.com
6  tmcpherson@sheppardmullin.com

7  DANIELLE VRABIE (*pro hac vice*)
   30 Rockefeller Plaza
8  New York, New York 10112-0015
   Telephone:  212-653-8700
9  Facsimile:   212-653-9701
   dvrabie@sheppardmullin.com
10
   Attorneys for Defendants
11 FUNDAMENTUM HEALTH, INC., SAMEDAY
   TECHNOLOGIES, LLC, erroneously sued as
12 SAMEDAY TECHNOLOGIES, INC.,
   PRAESIDIUM DIAGNOSTICS LLC, and
13 QUICKMED DIAGNOSTICS, INC.

14              UNITED STATES DISTRICT COURT

15       CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| 16  SDI LABS, INC., a California corporation, | Case No. 2:23-cv-05619-MMF (MRWx) |
| 17 | |
| 18              Plaintiff, | **CORPORATE DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| 19       v. | |
| 20  SAMEDAY TECHNOLOGIES, INC., a Delaware Corporation dba SAMEDAY HEALTH, PRAESIDIUM | |
| 21  DIAGNOSTICS LLC, dba SAMEDAY HEALTH AND SAMEDAY | Hearing Date:    December 4, 2023 |
| 22  TESTING, FUNDAMENTUM HEALTH, INC., a Delaware | Time:              10:00 a.m. Courtroom:      5A |
| 23  Corporation,    dba QUICK MEDDX, FELIX HUETTENBACH, an | Complaint Filed:  May 22, 2023 |
| 24  individual, and DOES 1 through 50, inclusive, | **[REDACTED]** |
| 25 | |
| 26              Defendants. | |

27

28

# TABLE OF CONTENTS

Page

I. INTRODUCTION ......................................................................................... 1

II. THE MOTION TO DISMISS THE FAC SHOULD BE GRANTED ........... 1

    A.    CUTSA Preempts SDI's Tort Claims. ............................................. 1

    B.    SDI Has Not Stated Claims for Fraud and Promissory Estoppel. ........................................................................................ 4

        1.    SDI Has Not Pleaded Any New Facts Regarding Huettenbach's Representations. ............................................. 4

        2.    SDI Has Not Pleaded a Clear and Unambiguous Promise. ............................................................................... 5

        3.    SDI Has Not Pleaded Intent and Non-Performance. ........... 7

        4.    SDI Has Not Pleaded Any New Facts Regarding Justifiable or Reasonable Reliance. ..................................... 7

    C.    SDI Has Not Stated Claims for Tortious Interference. .................... 9

    D.    SDI Has Not Stated a Claim for Breach of the NDA. .................... 12

    E.    SDI Has Not Pleaded Alter Ego. .................................................. 13

III. CONCLUSION ......................................................................................... 17

1

# TABLE OF AUTHORITIES

2

Page(s)

3

<u>Cases</u>

4

*Ali v. Fasteners for Retail, Inc.*
   544 F. Supp. 2d 1064 (E.D. Cal. 2008) ................................................................. 3

5

6

*Anokiwave, Inc. v. Rebeiz*
   2018 WL 4407591 (S.D. Cal. Sep. 17, 2018) ..................................................... 3

7

8

*Associated Vendors, Inc. v. Oakland Meat Co.*
   210 Cal. App. 2d 825 (1962) .............................................................................. 16

9

10

*Bastidas v. Good Samaritan Hosp.*
   2014 WL 3362214 (N.D. Cal. July 7, 2014) ..................................................... 14

11

12

*Buxton v. Eagle Test Sys.*
   2010 WL 1240749 (N.D. Cal. Mar. 26, 2010) ................................................. 11

13

14

*Collins v. eMachines, Inc.*
   202 Cal. App. 4th 249 (2011) .............................................................................. 5

15

16

*Davis v. Nadrich*
   174 Cal. App. 4th 1. (2009) ................................................................................ 2

17

18

*Dyke v. Zaiser* (1947)
   80 Cal.App.2d 639 ............................................................................................... 8

19

20

*Glob. Private Funding, Inc. v. Empyrean W., LLC*
   2014 WL 4542398 (C.D. Cal. Sep. 11, 2014) ................................................. 12

21

*Hillside Drilling Inc. v. Goldman Sachs Grp.*
   2009 WL 2246215 (N.D. Cal. July 27, 2009) ................................................. 14

22

23

*Hydro-Mill Co., Inc. v. Hayward, Tilton & Rolapp Ins. Assocs., Inc.*
   115 Cal. App. 4th 1145 (2004) ........................................................................... 5

24

25

*Kolodge v. Boyd*
   88 Cal. App. 4th 349 (2001) ........................................................................... 8, 9

26

27

*Masimo Corp. v. Sotera Wireless*
   2020 WL 7260660 (S.D. Cal. Dec. 9, 2020) .......................................... 14, 15, 16

28

*Meadows v. Emett & Chandler*
   99 Cal. App. 2d 496 (1950) ................................................................... 16

*Medimpact Healthcare Sys. v. IQVIA Inc.*
   2020 WL 5064253 (S.D. Cal. Aug. 27, 2020) ............................... 2, 3, 4

*Morgan v. Powe Timber Co.*
   367 F. Supp. 2d 1032 (S.D. Miss. 2005) ........................................... 15

*Neilson v. Union Bank of Cal., N.A.*
   290 F. Supp. 2d 1101 (C.D. Cal. 2003) ............................................ 16

*Pacific Gas & Electric Co. v. BearStearns & Co.*
   50 Cal.3d 1118 (1990) ................................................................ 10, 11

*Prasad v. BAC Home Loans Servicing LP*
   2010 WL 5090331 (E.D. Cal. Dec. 7, 2010) ...................................... 6

*Rescue 1 Fin., LLC v. Complete Debt Relief, LLC*
   2023 WL 6373884 (C.D. Cal. Aug. 24, 2023) .................................... 2

*Sleep Sci. Partners v. Lieberman*
   2010 WL 1881770 (N.D. Cal. May 10, 2010) ................................... 10

*Smith v. City & Cty. of S.F.*
   225 Cal. App. 3d 38 (1990) ............................................................... 6

*Song v. Drenberg*
   2019 WL 1998944 (N.D. Cal. May 6, 2019) ................................... 11

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*
   802 F. Supp. 2d 1125 (C.D. Cal. 2011) ........................................... 12

*SunPower Corp. v. SolarCity Corp.*
   2012 WL 6160472 (N.D. Cal. Dec. 11, 2012) .................................... 3

*Top Agent Network, Inc. v. Zillow, Inc.*
   2015 WL 10435931 (N.D. Cal. Aug. 6, 2015) .................................... 1

*Upstrem, Inc. v. BHFO, Inc.*
   2021 WL 2038324 (S.D. Cal. May 21, 2021) .................................... 4

*Vess v. Ciba-Geigy Corp. USA*
   317 F.3d 1097 (9th Cir. 2003) ........................................................... 6

-iii-

*W. Air Charter, Inc. v. Schembari*
    2017 WL 10638759 (C.D. Cal. Oct. 6, 2017) ........................................................ 2

*Youst v. Longo*
    43 Cal. 3d 64 (1987) ............................................................................................ 10

*Zogarts v. Smith*
    86 Cal. App. 2d 165 (1948) ................................................................................ 7

<u>Other Authorities</u>

L.R. 11-6.1 ................................................................................................................ 18

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff SDI Labs, Inc. ("SDI") improperly seeks to relitigate numerous issues in its Opposition[1] that were already decided in Corporate Defendants' favor in the previous motion to dismiss, citing the same supporting factual allegations that the Court previously deemed insufficient.  (*See* Dkt. No. 18 ("9/19/23 Order.")  In addition, SDI effectively concedes that its tort claims are barred by CUTSA because each of its tort claims are "based on Defendants' acquisition of proprietary information." (Opp. at 5.)  The FAC and Opposition demonstrate that SDI cannot overcome the deficiencies identified by the Court, nor the additional deficiencies set forth in the Motion.  Accordingly, each of SDI's non-trade secret claims should be dismissed without leave to amend.

## II.    THE MOTION TO DISMISS THE FAC SHOULD BE GRANTED

### A.    CUTSA Preempts SDI's Tort Claims.

SDI attempts to avoid preemption of its tort claims by arguing that those claims are based, in part, on "property rights independent from SDI's trade secret rights", *i.e.*, SDI's current and anticipated contracts with customers and insurers. (Opp. at 6.)  As SDI would have it, CUTSA can never preempt a tortious interference with contractual relations claim because all contracts are separate "property rights."  That is not the law.

CUTSA preempts tort claims which are premised on a "common nucleus of fact" as the trade secret misappropriation claim.  *Top Agent Network, Inc. v. Zillow, Inc.*, 2015 WL 10435931, at *4 (N.D. Cal. Aug. 6, 2015).  This may include, and

---

[1] "Opposition" as used herein refers to SDI's opposition to Corporate Defendants' motion to dismiss ("Motion") the first amended complaint ("FAC") filed by Defendants Fundamentum Health, Inc. ("Fundamentum"), Sameday Technologies, LLC, erroneously sued as Sameday Technologies, Inc. ("Sameday"), Praesidium Diagnostics LLC, and Quickmed Diagnostics, Inc. ("Quickmed Diagnostic") (collectively, "Corporate Defendants").

1   *often does include*, claims for tortious interference and fraud-based claims involving

2   current and anticipated contractual relations.[2]  *See, e.g., W. Air Charter, Inc. v.*

3   *Schembari*, 2017 WL 10638759, at *3 (C.D. Cal. Oct. 6, 2017) (CUTSA preempted

4   tortious interference with contractual relation claim because intent was alleged

5   based on defendant's "affirmative act of using [plaintiff's] client information to

6   solicit business"); *Rescue 1 Fin., LLC v. Complete Debt Relief, LLC*, 2023 WL

7   6373884, at *7 (C.D. Cal. Aug. 24, 2023) ("Plaintiff's tort and UCL claims are

8   premised on Defendants' allegedly wrongful conduct in soliciting Plaintiff's

9   employees . . . that conduct was only unlawful to the extent Defendants used

10   Plaintiff's trade secrets to execute it.")

11       *Medimpact Healthcare Sys. v. IQVIA Inc.*, 2020 WL 5064253 (S.D. Cal. Aug.

12   27, 2020) is instructive.  In *Medimpact*, plaintiff alleged that it entered into a joint

13   venture agreement with a company that was later-acquired by defendant, and shared

14   confidential and trade secret information pursuant to the joint venture under a non-

15   disclosure agreement.  *Id.* at *1-2.  Plaintiff alleged that defendant then acquired

16   plaintiff's joint venture partner for the express purpose of gaining access to

17   plaintiff's confidential information, and subsequently misappropriated that

18   information by using plaintiff's "trade secrets, [] confidential and proprietary

19   technical information and know-how and customer information" to steal plaintiff's

20   customers, develop a competing product, and sabotage the joint venture agreement.

21   _____

22   [2] To be clear, the only available claim in connection with an *existing* contract is intentional interference, as there is no cause of action for negligent interference with *existing* contractual relations in California.  *Davis v. Nadrich*, 174 Cal. App. 4th 1,

23   9. (2009).  For tortious interference with *prospective* economic relations, a plaintiff must additionally plead an independently wrongful act, whether or not intent is a

24   required element.  *See Medimpact Healthcare Sys. v. IQVIA Inc.*, 2020 WL 5064253 (S.D. Cal. Aug. 27, 2020).  Accordingly, CUTSA preempts tortious interference

25   claims where the elements of interference, intent, and/or the independently wrongful act are premised on the same nucleus of facts comprising trade secret

26   misappropriation.  *Id.*   Although the FAC is unclear as to which theory SDI is pursuing, Corporate Defendants nevertheless address each argument in the

27   Opposition to demonstrate that preemption applies regardless.  (*See also* Section II.C., *infra*.)

28

*Id.* at *17 (quotation marks omitted).  The Court held plaintiff's claims for tortious interference and fraud under the UCL were preempted by CUTSA because "the only way defendant was able to" engage in said conduct "was through the misappropriation of trade secrets," and plaintiff could not allege intent "without the trade secret misappropriation facts."  *Id.* at *17, 19.

So too here.  SDI repeatedly alleges throughout the FAC that Huettenbach's true intent underpinning the entire transaction was "to deceive Plaintiff to induce Plaintiff to produce its confidential information" and/or trade secrets.  (*See* FAC ¶¶ 118, 123, 129, 131, 184.)  SDI further alleges that its "trade secrets" included, *inter alia*, "SDI Labs Customer List and agreements", "SDI Labs Health Insurance Plan in-network Payor Contracts", and "SDI Labs Laboratory developed Test menu (FLU, A/B, RSV, COVID-19)."  (*See* FAC, Ex. 4; FAC ¶ 152.)  Accordingly, because SDI's allegations as to Huettenbach's conduct underlying each of SDI's tort claims "fall[] within [CUTSA's] definition of improper means and derive[] from the same nucleus of facts as [its] trade secret claim", its state law tort claims are preempted.  *See Anokiwave, Inc. v. Rebeiz*, 2018 WL 4407591, at *6 (S.D. Cal. Sep. 17, 2018) (quotation marks and citations omitted).  SDI's efforts to now distance itself from its own allegations by cherry-picking select portions of the FAC, while omitting its overarching allegations regarding intent, interference, and its alleged trade secrets, are unavailing.

Finally, SDI argues that the preemption analysis is "premature when there is a question as to whether misappropriated information was trade secret or not", citing *Ali v. Fasteners for Retail, Inc.*, 544 F. Supp. 2d 1064, 1070 (E.D. Cal. 2008).  California federal courts have squarely rejected *Ali*'s approach to preemption.  *See SunPower Corp. v. SolarCity Corp.*, 2012 WL 6160472, at *14 (N.D. Cal. Dec. 11, 2012) (rejecting *Ali* because it was decided before controlling California state court cases, which clarified that "CUTSA supersedes claims based on the misappropriation of information, regardless of whether such information ultimately

-3-

satisfies the definition of trade secret."); *Upstrem, Inc. v. BHFO, Inc.*, 2021 WL 2038324, at *9 (S.D. Cal. May 21, 2021) ("Plaintiff contends 'it would be premature to dismiss this claim based on preemption' …. [however,] [r]egardless of whether Defendant induced Mr. Lamar to breach his employment agreement to reveal Plaintiff's confidential non-trade secret or trade secret information learned during the course of Mr. Lamar's employment, CUTSA preempts both."). Accordingly, because the facts supporting SDI's tort claims are inextricably "intertwined with [its] trade secret misappropriation claim" (*see Medimpact*, 2020 WL 5064253 at *19), CUTSA preempts the tort claims as a matter of law.

**B.**    **SDI Has Not Stated Claims for Fraud and Promissory Estoppel.**

SDI separately argues that is has "sufficiently pled the claims related to misrepresentations." (Opp. at 8.)  However, the Court has already considered—and rejected— each of the arguments SDI resurrects in the Opposition, based on the same set of facts SDI alleged in its original complaint.  Therefore, SDI's fraud and promissory estoppel claims should be dismissed without leave to amend.

**1.**    **SDI Has Not Pleaded Any New Facts Regarding Huettenbach's Representations.**

The Court previously held that each of Huettenbach's allegedly fraudulent statements were not misrepresentations because: (1) "Plaintiff was on notice about the settlement" and "[d]etails regarding the Settlement were also publicly available"; (2) "future valuation[s] . . . are non-actionable statements of opinion";[3] and (3) "Plaintiff was on notice that the deal was not yet finalized" when Huettenbach allegedly claimed he was the owner of SDI.  (*See* 9/19/23 Order at 10); *see also*

---

[3] Although SDI abandoned its allegations that Huettenbach's statements regarding valuation were fraudulent following the Court's Order to the contrary (*see* 9/19/23 Order at 9; FAC ¶¶ 103-143), SDI inexplicably attempts to revive these allegations through argument in the Opposition. (*See* Opp. at 8-9.)  Corporate Defendants do not address these rejected and subsequently abandoned allegations because they are not in the FAC.  Even if these allegations or claims were in the FAC, they would fail for the same reasons stated in the Court's 9/19/23 Order.

*Hydro-Mill Co., Inc. v. Hayward, Tilton & Rolapp Ins. Assocs., Inc.*, 115 Cal. App. 4th 1145, 1154 (2004) ("[I]gnorance of the truth . . . by the party to whom [the misrepresentation] was directed" is an essential element of a fraud claim.) However, the only "new" fact SDI alleges on amendment—that Huettenbach allegedly texted Mohiuddin on December 6, 2022 "agree[ing] that the deal for the purchase of SDI was complete"—falls directly within the Court's conclusion that Huettenbach's announcement to SDI employees was not actionable. (*See* 9/19/23 Order ("[T]his was not a misrepresentation, as Plaintiff was on notice that the deal was not yet finalized at that point.")) Therefore, SDI has failed to allege a single new fact sufficient to overcome dismissal.

*Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 256 (2011)—the only case SDI cites in support of its misrepresentation argument—does not compel a different result. In *Collins*, the Court noted that disclosure obligations arise only where the defendant is "exclusively knowledgeable" of a material fact, and said fact is "difficult to discover." *Id.* Here, in contrast, SDI admits it was on notice regarding both the settlement reached in *People v. Sameday* ("Settlement") and the status and terms of the deal when each of the alleged statements were made. (*See* FAC ¶¶ 105, 115, 127, 130, 186; Dkt. No. 9-3 at 14, 20, 25; Term Sheet, *passim*.) For the same reasons identified in the 9/19/23 Order, SDI's fraud claims should be dismissed.

### 2.    SDI Has Not Pleaded a Clear and Unambiguous Promise.

As suspected, and now confirmed in the Opposition, SDI rests its promissory fraud and estoppel claims in part on its allegation that, prior to the parties' execution of the Term Sheet, "Huettenbach assured SDI" "[t]he only contingency of closing" "was that SDI notifies insurance payors as required per respective contract for the change of the ownership." (*See* Opp. at 9, 12-13; FAC ¶ 46.) However, these particular assurances are not pleaded in connection with SDI's false promise and promissory estoppel claims (*see* FAC ¶¶ 127, 182). Moreover, SDI has not specifically pleaded the time, place, and parties present as required by Rule 9(b), nor

facts showing a clear and unambiguous promise.  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *Smith v. City & Cty. of S.F.*, 225 Cal. App. 3d 38, 48 (1990).  Accordingly, SDI has failed to meet its pleading burden for both fraud and promissory estoppel, and SDI's attempt to cure its defective pleading through argument is improper.

Even assuming, *arguendo*, that SDI *had* pleaded this alleged assurance in connection with its promissory fraud and estoppel claims, SDI still cannot plead a "clear and unambiguous promise," because the subsequently-executed term sheet (Dkt. No. 9-3, Ex. 4 ("Term Sheet"))[4] explicitly set forth contrary conditions. Approximately one week following Huettenbach's purported "assurances"—and prior to any of the actions SDI purportedly took in reliance on those assurances—the parties executed the Term Sheet.  (FAC ¶ 47.) ████████████████████ ██████████████████████████████████████████████████████ ████████████████████████████████████████████ (Term Sheet at 1-3.) ████ ██████████████████████████████████████████████████████ ████████████████████████████████████ (*Id.* at 3.)  Thus, because Huettenbach's "promise" is contradicted, and indeed, superseded by the plain terms of the Term Sheet, SDI has not alleged any detrimental reliance based on a "clear and unambiguous promise."  *See Prasad v. BAC Home Loans Servicing LP,* 2010 WL 5090331, at *5 (E.D. Cal. Dec. 7, 2010) (dismissing promissory estoppel claim where "the plain terms of [plaintiff's application] expressly placed plaintiff on notice that issuance of a loan modification was not guaranteed by simply sending in the requested documentation"); (*see also* 9/18/23 Order at 21.)

---

[4] The Court previously granted Corporate Defendants' Request for Judicial Notice and Incorporation by Reference as to Dkt. No. 9-3, Exs. 1-7.  (*See* 9/18/23 Order at 2.)

### 3.    SDI Has Not Pleaded Intent and Non-Performance.

SDI argues it has pleaded intent and non-performance because Fundamentum "voluntarily deprive[d] [it]self of the power" to close the transaction by winding down, and Fundamentum "assumed" SDI was terminating the deal." (Opp. at 13-14.) Each of these arguments is plainly contradicted by the FAC and the documents incorporated therein by reference.

First, as stated above, there was no binding offer in place, much less a binding purchase price. (Term Sheet at 1-2.) Moreover, Fundamentum did not "voluntarily deprive[]" itself of the power to perform, given that its decision to wind down was the result of certain unexpected events, which were unrelated to the transaction. (*See* FAC ¶ 95 (alleging Huettenbach suddenly left Fundamentum and the United States during negotiations)); *cf. Zogarts v. Smith*, 86 Cal. App. 2d 165, 170-71 (1948) ("The general rule is that if the obligor's ability to pay out of profits is due to the involuntary loss of his business, he is excused from paying.")

Second, Fundamentum did not "assume" SDI was terminating the deal. Rather, Fundamentum submitted a revised offer to purchase SDI, as it was permitted to do under the Term Sheet, and SDI failed to submit a timely acceptance or counter-offer. (S*ee* Term Sheet at 1; Dkt. No. 9-3, Ex. 6.) Accordingly, SDI's argument that Mohiuddin "was still trying to discuss the issues involved with Heuttenbach" (Opp. at 13)—particularly given its admission that SDI *knew* Huettenbach was no longer with Fundamentum at that point (FAC ¶ 95)—has no bearing on Fundamentum's intent and offer to close the transaction, nor SDI's subsequent rejection of that offer. Therefore, SDI has not pleaded that Corporate Defendants had the requisite intent for its fraud and promissory estoppel claims.

### 4.    SDI Has Not Pleaded Any New Facts Regarding Justifiable or Reasonable Reliance.

Finally, SDI makes much of the fact that it was represented by a broker, but not represented by counsel, during the first four months of negotiations. (Opp. at 3,

5, 8, 10-13, 15.)  SDI's emphasis on that fact—which was previously acknowledged by the Court (*see* 9/18/23 at 10 ("Plaintiff was assisted by a broker throughout the entire negotiations and also retained counsel sometime between January and February 2022"))—reflects a fundamental misunderstanding of the Court's basis for dismissal.

As noted by the Court, SDI's reliance was manifestly unreasonable because "reliance on statements made by an adversary during negotiations [is] unreasonable", and because SDI was on notice regarding the allegedly concealed and/or misrepresented information.  (*See* 9/18/23 Order at 10 ("Plaintiff could have easily discovered additional information . . . with due diligence" and "was on notice that the deal was not yet finalized."))  In other words, SDI's reliance was manifestly unreasonable based on its allegations that it was aware of the Settlement, knew where to obtain and could easily obtain additional information regarding the Settlement, and knowingly entered into the non-binding Term Sheet, which plainly contradicted Huettenbach's prior alleged representations.  (*Id.*)

SDI's purported authority is inapposite.  In *Dyke v. Zaiser* (1947) 80 Cal.App.2d 639, 650, the Court stated that a plaintiff may only rely upon statements made by an adversary during negotiations where plaintiff is "ignorant" to the "matters concerning which material representations are made," and the "facts are not, and cannot be expected to be [] within [plaintiff's] knowledge." *Id.*  Here, in contrast, SDI admits that it was *not* "ignorant" regarding the deal status and terms (FAC ¶¶ 95, 186; *see also* Term Sheet at 1), and further admits that it was on notice regarding the Settlement (FAC ¶ 105; *see also* Dkt. No. 9-3 at 14, 20, 25 (news articles disclosing each of the allegedly-omitted facts).)  Accordingly, *Dyke* cuts squarely against SDI's reasonable reliance argument, and instead supports dismissal of SDI's fraud and promissory estoppel claims.

*Kolodge v. Boyd*, 88 Cal. App. 4th 349, 373 (2001), is similarly distinguishable.  In *Kolodge*, appellant claimed that his reliance on an outdated real

1  estate appraisal was reasonable, based on his personal expertise in real estate.  *Id.*

2  Critically, the Court acknowledged that "the subsequent appraisal should have made

3  appellant suspicious, and created a duty to investigate further."  *Id.*  However,

4  because appellant *did* make further inquiries, but "considered it prudent to rely

5  [instead] on respondent's appraisal at the time he made his bid" *because of* his real

6  estate expertise, whether appellant's reliance was reasonable could not be

7  determined as a matter of law.

8         Here, SDI admits that each of the allegedly-misrepresented facts *was* within

9  its universe of knowledge at the time the representations were made.  (*See* FAC

10 ¶¶ 105, 115, 127, 130, 186; *see* Dkt. No. 9-3 at 14, 20, 25; Term Sheet, *passim*.)

11 SDI further alleges that, despite this knowledge, it did not conduct any further

12 inquiry into the Settlement, and likewise elected to rely solely on prior "assurances"

13 by Huettenbach which were plainly contradicted by the Term Sheet.  (FAC ¶ 116.)

14 SDI does not allege any further justification for its reliance, and instead rests

15 entirely on its previous allegation that "Plaintiff's reliance on Defendants'

16 representations was justified as Huettenbach was the chief executive officer of Same

17 Day and the Same Day affiliates."[5]  (*Id.*)  SDI's failure to alleged any new facts,

18 notwithstanding the Court's order deeming its previous allegations insufficient,

19 warrants dismissal of its fraud claims without leave to amend.

20 **C.**    **SDI Has Not Stated Claims for Tortious Interference.**

21        Although SDI argues it has now identified specific contractual relationships—

22 citing the Netflix Legal Services Agreement ("LSA"), offers from unidentified

23 buyers, and the same insufficient allegations it raised in its original complaint—its

24 argument is not supported by the allegations in the FAC.  In addition, SDI fails to

25

26 _____

[5] As set forth in the Motion, Huettenbach's release of the escrow funds, and
27 Fundamentum's halting of that release the next day, is of no assistance to SDI, given
that the funds were released on January 9, 2023, *after* each purported instance of
28 reliance.  (*See* Motion at 13; FAC ¶ 130.)

respond to Corporate Defendants' argument that SDI has not pleaded independently wrongful conduct in support of its tortious interference claims. Therefore, SDI's tortious interference claims should be dismissed.

"Tortious interference with contractual relations requires [] the existence of a valid contract between the plaintiff and a third party," (*Pacific Gas & Electric Co. v. BearStearns & Co.*, 50 Cal.3d 1118, 1126 (1990)), while tortious interference with prospective economic advantage requires a "*reasonably probable* [] prospective economic advantage [that] would have been realized but for defendant's interference." *Youst v. Longo*, 43 Cal. 3d 64, 71 (1987).

SDI argues that it has identified a specific contract because it "specifically alleged that it handed over the Netflix agreement" to the Corporate Defendants. (Opp. at 6.) The FAC contains no such allegation, and indeed, alleges contrary facts. Specifically, the FAC alleges that it was *Sameday*—not SDI—that first proposed the Netflix LSA to SDI. (*See* FAC ¶ 66 ("Gabriel Reches of the Same Day team texted SDI employee Yashashree Shende, to obtain a Netflix SLA (Lab Service Agreement) and requested signatures from SDI's President."); *cf.* FAC ¶ 67 (alleging that SDI "handed over" the *data*, *i.e.*, saliva collection method details, that "was necessary for the performance of the [Netflix LSA]", to which both SDI and Sameday were parties).) SDI does not allege that it had any existing contract or reasonably anticipated contractual relationship with Netflix, much less explain how Sameday's conduct (*i.e.*, *creating* a separate contractual opportunity for SDI) "interfered" with said relationship. *See Sleep Sci. Partners v. Lieberman*, 2010 WL 1881770, at *6 (N.D. Cal. May 10, 2010) ("The tort cause of action for interference with a contract does not lie against a party to the contract.") (quotation marks and citations omitted).

Likewise, SDI's allegation that "Huettenbach induced SDI to sign the term sheet, in order to lock SDI into dealing exclusively with Fundamentum," "although "SDI had other [unidentified] reasonable offers and suitors," is insufficient. (Opp.

at 16.)  SDI does not identify any of these alleged "offers and suitors", and does not allege that Corporate Defendants knew about said offers.  *See Buxton v. Eagle Test Sys.*, 2010 WL 1240749, at *2 (N.D. Cal. Mar. 26, 2010) ("Without any identifiable prospective employers, plaintiff's expectation of future employment is 'at most a hope for an economic relationship and a desire for future benefit.'") (citation omitted); *Pacific Gas*, 50 Cal.3d at 1126 (1990) (the defendant must have knowledge of the specific contract or opportunity).  Indeed, it is highly unlikely that SDI *could* allege that the Corporate Defendants were aware of any specific offer, given the confidential nature of such offers and negotiations.  (*See* NDA, § 1 ("The existence of any business negotiations, discussions, consultations, or agreements in progress between the parties shall be considered Confidential Information".))  In any event, negotiations in contemplation of an offer are not "reasonably probable" economic advantages as a matter of law, and therefore, SDI cannot state a claim for tortious interference based on those allegations.  *See Song v. Drenberg*, 2019 WL 1998944, at *8 (N.D. Cal. May 6, 2019) ("[E]ven in a situation where companies were actively engaging in business negotiations, that is not enough to show that it was 'reasonably probable the prospective economic advantage would have been realized but for defendant's interference.'")

Aside from the above allegations (which, notably, are not pleaded in connection with SDI's tortious interference claims), SDI once again points to its prior allegations regarding the insurance payor notifications and lost customers in the Opposition.  These allegations remain insufficient.  (*See* Motion at 16-17; *See* 9/18/23 Order at 19-20.)  SDI does not allege a single new fact showing which, whether, or how, its contracts with its insurers were "disrupted" following the notifications (*see* Motion at 3, fn. 3; *see also* Request for Incorporation by Reference at 1).  This vague allegation, in addition to SDI's allegation that it "lost 186 different paying customers" without identifying a single customer, were already rejected by the Court.  (*See* 9/18/23 Order at 19-20.)  Accordingly, as SDI has once

1   again failed to identify a single lost customer or insurer, the tortious interference

2   claims should be dismissed without leave to amend.

3       Finally, the FAC does not allege, and the Opposition does not explain, how

4   each of the aforementioned allegations of interference are wrongful independent

5   from the interference itself.  (*See* Motion at 17); *see also Glob. Private Funding,*

6   *Inc. v. Empyrean W., LLC*, 2014 WL 4542398, at *3 (C.D. Cal. Sep. 11, 2014)

7   (dismissing tortious interference claim because "Plaintiff has not alleged sufficient

8   facts to establish that [defendant's] conduct . . . bypassing [plaintiff's] involvement

9   in [it's] projects is independently unlawful.").   Indeed, it is evident from the FAC

10  and Opposition that SDI *cannot* allege wrongful conduct independent of its trade

11  secret misappropriations claims.  (*See* Section II.A., *supra*.)  Therefore, even if SDI

12  were given the opportunity to amend, its tortious interference claims would

13  nevertheless fail.

14      SDI has once again failed to identify a single lost contract, customer, or

15  insurer, and has not and cannot plead independently wrongful conduct that is not

16  subject to CUTSA preemption.  SDI's tortious interference claims should be

17  dismissed without leave to amend.

18  **D.   SDI Has Not Stated a Claim for Breach of the NDA.**

19      The Opposition effectively concedes that SDI's only amended allegations

20  regarding Sameday's purported breach of the NDA—SDI's disclosure of its own

21  confidential information to third-party Berrydx and Corporate Defendants' failure to

22  timely respond to SDI's demand letters—are insufficient.  (*See* Opp. at 20

23  ("Admittedly, th[e] particular allegation [that SDI sent trade secrets to affiliated

24  companies and third parties] was made on information and belief"); *id.* at 21 (failing

25  to respond to argument that SDI's damages allegations regarding Corporate

26  Defendants' failure to return or destroy the Confidential Information is

27  impermissibly vague); *see also Stichting Pensioenfonds ABP v. Countrywide Fin.*

28  *Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) (("[F]ailure to respond in an

-12-

1  opposition brief to an argument put forward in an opening brief constitutes waiver

2  or abandonment.")).

3         The Opposition instead focuses entirely on SDI's prior, and insufficient

4  allegations regarding its website[6] (*see* 9/19/23 Order at 22-23), and information

5  shared between Sameday and its affiliates—conduct which was either expressly

6  permitted under the NDA, or outside of the NDA's scope.  (*See* 9/19/23 Order at 23;

7  NDA, §§ 1, 4 (exceptions to the NDA include information shared with Sameday

8  affiliates, information disclosed by SDI to third parties and/or information in the

9  public domain); *cf.* FAC ¶¶ 51, 62, 66, 67 (SDI voluntarily disclosed its own

10 Confidential Information with full knowledge of how that information would be

11 used.)  As the Court has already considered and rejected the sufficiency of these

12 allegations, they are of no use to SDI here.[7]

13        In short, SDI does not allege a single instance of improper disclosure or use

14 under the NDA, and does not argue that it has pleaded or can plead damages

15 resulting from Sameday's alleged failure to return or destroy the Confidential

16 Information following the termination of the transaction.  SDI's claim for breach of

17 the NDA should be dismissed without leave to amend.

18 **E.    <u>SDI Has Not Pleaded Alter Ego.</u>**

19        SDI argues that it has pleaded alter ego liability because:  (1) SDI alleges

20 Huettenbach "was responsible" for Sameday, Quickmed Diagnostic, and

21

22 [6] Corporate Defendants did not reassert their prior argument that SDI's combo test
   was not a trade secret in light of the Court's 9/19/23 Order permitting SDI's trade
23 secret claim to proceed.  Nonetheless, SDI still has not pleaded any facts regarding
   "***what*** information was disclosed in violation of the NDA," (9/19/23 Order at 22
24 (citing (emphasis in original)), as the FAC simply repeats SDI's deficient allegation
   that "Same Day, without the permission of SDI, copied SDI's website and other
25 proprietary information and posted it online."  (See 9/19/23 Order at 22-23.)

26 [7] It is ironic that SDI complains of Corporate Defendants allegedly violating
   confidentiality provisions, but SDI itself disregards the confidentiality provision in
27 the Term Sheet, notwithstanding the Court's September 18, 2023 Order granting
   Corporate Defendants' application to file the Term Sheet and related
28 communications under seal (Dkt. No. 16).

1    Fundamentum; (2) SDI speculates Fundamentum was undercapitalized; and (3) SDI

2    alleges Quickmed and Fundamentum were "used" to procure assets on behalf of

3    Sameday.  (Opp. at 22.)  These allegations, even taken together, are insufficient to

4    plead alter ego.

5         First, the allegation that Huettenbach was "responsible for all three Corporate

6    Defendants" does not weigh towards a finding of alter ego.  To plead alter ego, the

7    complaint must "specifically identify which defendant is alleged to have committed

8    which act (in other words, [a plaintiff may not] allege that 'defendants' did

9    something unless *all* defendants are involved in the particular act." *Hillside Drilling*

10   *Inc. v. Goldman Sachs Grp.*, 2009 WL 2246215, at *4 (N.D. Cal. July 27, 2009).

11   Moreover, "it is well-established 'that directors and officers holding positions with a

12   parent and its subsidiary can and do 'change hats' to represent the two corporations

13   separately, despite their common ownership.'" *Masimo Corp. v. Sotera Wireless*,

14   2020 WL 7260660, at *13 (S.D. Cal. Dec. 9, 2020) (citation omitted).  "Courts

15   generally presume that such dual status individuals wear their 'parent hats' when

16   serving the parent's interests, and their 'subsidiary hats' when serving the

17   subsidiary's interests." *Bastidas v. Good Samaritan Hosp.*, 2014 WL 3362214, at

18   *4 (N.D. Cal. July 7, 2014).  "To defeat this presumption, a plaintiff would need

19   to allege facts demonstrating that the dual status individuals were acting in the

20   parent's interest, and not the subsidiary's, when they engaged in the challenged

21   conduct." *Id.*

22        Here, SDI repeatedly interchanges Huettenbach and Corporate Defendants

23   throughout the FAC, but does not allege specific facts regarding each entity's

24   improper conduct.  (*See, e.g.,* FAC ¶¶ 158-200 (alleging tortious interference,

25   promissory estoppel, and breach of the NDA against "all Defendants", generally).)

26   In addition, SDI has not pleaded any facts sufficient to overcome the presumption

27   that each of Corporate Defendants was acting in their own respective interests at

28   various stages in the transaction.  Indeed, the allegations in the FAC only serve to

-14-

1   *reinforce* this presumption.  (*See*, *e.g.*, FAC ¶¶ 46-47, Term Sheet, *passim*

2   (Huettenbach's alleged statements regarding closing contingencies were

3   contradicted by the subsequently-executed Term Sheet with Fundamentum); FAC ¶¶

4   69, 72 (Sameday's CFO, CEO, and in-house counsel halted release of the escrow

5   funds Huettenbach authorized the day prior); FAC ¶¶ 94-101 (after Huettenbach left

6   Fundamentum, Mohiuddin continued communicating with him privately, and

7   rejected Fundamentum's offer to close the transaction)).  Accordingly, SDI's

8   allegation that Huettenbach "was responsible" for Corporate Defendants,

9   particularly given its allegations that Corporate Defendants consistently acted within

10  their own respective interests, does not suggest a unity of interest.

11          As to the second and third allegations, "[h]igh-level involvement by a parent

12  company in a subsidiaries' operations or finances [] is generally insufficient to

13  establish unity of interest."  *Masimo*, 2020 WL 7260660 at *13.  Rather, "high-level

14  involvement, without any indication that corporate formalities were not observed,

15  establishe[s] only that the defendant was 'an active parent corporation involved

16  directly in decision-making about its subsidiaries' holdings.'"  *Id.* (citation omitted)

17  (emphasis added).

18          Here, SDI's sole allegations that the "corporate formalities were not

19  observed" are SDI's speculation that Fundamentum was undercapitalized and its

20  allegation that Quickmed Diagnostic was initially slated to acquire SDI.  However,

21  triangular transfers are "a recognized and legitimate type of corporate evolution,"

22  and SDI's allegations that Fundamentum was not properly capitalized are belied by

23  the FAC.  *See Morgan v. Powe Timber Co.*, 367 F. Supp. 2d 1032, 1039 (S.D. Miss.

24  2005) (quotation marks and citation omitted); (FAC ¶ 70; FAC, Ex. 3

25  (Fundamentum deposited approximately $3 million into escrow)); *see also* Term

26  Sheet at 1 (disclosing Fundamentum's current and *projected* valuation).  Moreover,

27  the allegation that Quickmed was originally slated to acquire SDI does nothing to

28  suggest a unity of interest between Huettenbach and Corporate Defendants.  At

1  most, it is indicative of "macro-management" by a CEO attempting to structure a

2  transaction in a manner that most benefits each of the companies, rather than an

3  indication that the separateness of the companies is not respected.  *See Masimo*,

4  2020 WL 7260660 at *13.

5        As to the second prong of alter ego, SDI does not allege that an inequitable

6  result will follow if the corporate form is not respected.  *See Meadows v. Emett &*

7  *Chandler*, 99 Cal. App. 2d 496, 499 (1950) ("The rule is firmly settled that no

8  reliance can be had on [alter ego] theory in the absence of <u>pleading</u> that recognition

9  of the corporate entity would sanction a fraud or promote injustice.") (emphasis

10 added).  Moreover, although SDI argues (but does not plead) that "SDI would be

11 deprived of the ability to pursue the corporations" "[i]f the corporate defendants are

12 dismissed" (Opp. at 23), such argument misunderstands, and indeed, reverses the

13 rationale behind the alter ego doctrine.  *See Associated Vendors, Inc. v. Oakland*

14 *Meat Co.*, 210 Cal. App. 2d 825, 842 (1962) ("The purpose of the doctrine is not to

15 protect every unsatisfied creditor, but rather to afford him protection, where some

16 conduct amounting to bad faith makes it inequitable . . . for the equitable owner of a

17 corporation to hide behind its corporate veil."); *see also Neilson v. Union Bank of*

18 *Cal., N.A.*, 290 F. Supp. 2d 1101, 1117 (C.D. Cal. 2003) ("California courts have

19 rejected the view that the potential difficulty a plaintiff faces collecting a judgment

20 is an inequitable result that warrants application of the alter ego doctrine.")  Here,

21 because SDI has not specifically pleaded resulting injustice, and does not allege any

22 bad faith or misconduct by *Corporate Defendants* (and, indeed, alleges that

23 Huettenbach is no longer with Fundamentum),, the FAC does not and cannot satisfy

24 the second prong of alter ego.  SDI's conclusory allegations of unity of interest and

25 its failure to specifically plead resulting injustice are insufficient.  Corporate

26 Defendants should be dismissed.

27

28

1

### III.    <u>CONCLUSION</u>

2         For the foregoing reasons, Corporate Defendants respectfully request that the

3    Court grant the Motion and dismiss the non-trade secret claims in the FAC as

4    against Corporate Defendants without leave to amend.

5

6    Dated:  November 20, 2023    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

7                   By:    _____

8                         DANIELLE VRABIE (*pro hac vice*)

9                         JUTHAMAS J. SUWATANAPONGCHED
                          TARYN Q. MCPHERSON

10

11                        Attorneys for Defendants
                          FUNDAMENTUM HEALTH, INC.,

12                        SAMEDAY TECHNOLOGIES LLC,
                          erroneously sued as SAMEDAY

13                        TECHNOLOGIES, INC., PRAESIDIUM
                          DIAGNOSTICS LLC, and QUICKMED

14                        DIAGNOSTICS, INC.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants Fundamentum Health, Inc., Sameday Technologies, LLC, Praesidium Diagnostics LLC, and Quickmed Diagnostics, Inc., certifies that this brief contains 5,803 words, which complies with the word limit of L.R. 11-6.1.


Dated:  November 20, 2023        SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By: _____

DANIELLE VRABIE (*pro hac vice*)
JUTHAMAS J. SUWATANAPONGCHED
TARYN Q. MCPHERSON

Attorneys for Defendants
FUNDAMENTUM HEALTH, INC.,
SAMEDAY TECHNOLOGIES LLC,
erroneously sued as SAMEDAY
TECHNOLOGIES, INC., PRAESIDIUM
DIAGNOSTICS LLC, and QUICKMED
DIAGNOSTICS, INC.