1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
2    Including Professional Corporations
   JUTHAMAS J. SUWATANAPONGCHED, Cal. Bar No. 266313
3  TARYN Q. McPHERSON, Cal. Bar No. 329461
   333 South Hope Street, 43rd Floor
4  Los Angeles, California 90071-1422
   Telephone:  213-620-1780
5  Facsimile:   213-620-1398
   jsuwatanapongched@sheppardmullin.com
6  tmcpherson@sheppardmullin.com

7  DANIELLE VRABIE (*pro hac vice*)
   30 Rockefeller Plaza
8  New York, New York 10112-0015
   Telephone:  212-653-8700
9  Facsimile:   212-653-9701
   dvrabie@sheppardmullin.com

10
   Attorneys for Defendant and Counter-
11 Claimant FUNDAMENTUM HEALTH,
   INC. and Defendants SAMEDAY
12 TECHNOLOGIES, LLC, and QUICKMED
   DIAGNOSTICS, INC.

13                   UNITED STATES DISTRICT COURT

14        CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

15

16 | SDI LABS, INC., a California corporation, | Case No. 2:23-cv-05619-MMF |
|---|---|
|   | **(1)  DEFENDANTS FUNDAMENTUM HEALTH, INC., SAMEDAY TECHNOLOGIES, LLC, AND QUICKMED DIAGNOSTICS, INC.'S ANSWER TO SECOND AMENDED COMPLAINT;** |

17                Plaintiff,

18           v.

19 SAMEDAY TECHNOLOGIES, INC., a
   Delaware Corporation dba SAME DAY
20 HEALTH, PRAESIDIUM
   DIAGNOSTICS LLC, dba SAME DAY
21 HEALTH AND SAME DAY
   TESTING, FUNDAMENTUM
22 HEALTH, INC., a Delaware
   Corporation, QUICKMED dba QUICK
23 MEDDX, FELIX HUETTENBACH, an
   individual, and DOES 1 through 50,
24 inclusive,

25                Defendants.

26 ─────────────────────────────
   FUNDAMENTUM HEALTH, INC., a
27 Delaware Corporation,

28                Counter-Claimant,

**(2)  COUNTER-CLAIMANT FUNDAMENTUM HEALTH, INC.'S COUNTERCLAIMS AGAINST SDI LABS, INC.; AND**

**(3)  DEMAND FOR JURY TRIAL**

Complaint Filed:     May 22, 2023
[Los Angeles County Superior Court Case No. 23SMCV02246]
Removal Date:        July 12, 2023

**[REDACTED]**

-1-

1

2          v.

3    SDI LABS, INC., a California
     corporation, and ROES 1 through 10,
4    inclusive,

5                    Counter-Defendants.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-

## ANSWER TO SECOND AMENDED COMPLAINT

Defendants Fundamentum Health, Inc. ("Fundamentum"), Sameday Technologies, LLC, erroneously sued as Sameday Technologies, Inc., Praesidium Diagnostics LLC ("Sameday"), and QuickMed Diagnostics, Inc. ("Quickmed Diagnostic") (collectively, "Corporate Defendants") state as follows in answer to Plaintiff SDI Labs, Inc.'s ("SDI") Second Amended Complaint ("SAC"):

## GENERAL ALLEGATIONS - PARTIES

1.      Answering paragraph 1 of the SAC, Corporate Defendants admit only that Sameday Technologies, Inc. dba Same Day Health was the successor corporation to Praesidium Diagnostics LLC.  Corporate Defendants deny each and every remaining allegation contained therein.

2.      Answering paragraph 2 of the SAC, Corporate Defendants admit only that QuickMed Diagnostics, Inc. d/b/a Quick Meddx owns and operates the website https://www.quickmeddx.com/ and has clinics in California, New York, and Virginia.  Corporate Defendants deny each and every remaining allegation contained therein.

3.      Answering paragraph 3 of the SAC, Corporate Defendants admit only that Fundamentum is a Delaware corporation that is authorized to conduct business in California and is located in Venice, California.  Corporate Defendants deny each and every remaining allegation therein.

4.      Answering paragraph 4 of the SAC, Corporate Defendants admit only that Felix Huettenbach was the founder of Sameday Technologies, Inc., QuickMed Diagnostic, and Fundamentum, and that he conducted business in Los Angeles County.  Corporate Defendants are without sufficient information to admit or deny the remaining allegations therein, and on that basis deny each and every remaining allegation contained therein.

5.      Answering paragraph 5 of the SAC, Corporate Defendants are without sufficient information to admit or deny the allegations, and on that basis deny each and every allegation contained therein.

6.      Answering paragraph 6 of the SAC, Corporate Defendants deny each and every allegation contained therein.

7.      Answering paragraph 7 of the SAC, Corporate Defendants deny each and every allegation contained therein.

8.      Answering paragraph 8 of the SAC, Corporate Defendants deny each and every allegation contained therein.

9.      Answering paragraph 9 of the SAC, Corporate Defendants deny each and every allegation contained therein.

10.      Answering paragraph 10 of the SAC, Corporate Defendants deny each and every allegation contained therein.

11.      Answering paragraph 11 of the SAC, Corporate Defendants deny each and every allegation contained therein.

12.      Answering paragraph 12 of the SAC, to the extent this paragraph contains conclusions of law, no response is required.  To the extent a response is required, and for all other allegations contained in this paragraph, Corporate Defendants deny each and every allegation contained therein.

## GENERAL FACTUAL ALLEGATIONS[1]

13.      Answering paragraph 13 of the SAC, Corporate Defendants are without sufficient information to admit or deny the allegations therein, and on that basis deny each and every allegation contained therein.

---

[1]Corporate Defendants have restated in this Answer certain of the headings as they appear in the SAC.  To the extent the headings, whether restated here or appearing in the SAC, purport to assert any factual allegations or legal conclusions, they deny each and every allegation contained therein.

14.     Answering paragraph 14 of the SAC, Corporate Defendants admit only that on April 20, 2022, the Los Angeles City Attorney and District Attorney filed a lawsuit against Sameday Technologies, Inc. dba Same Day Health and Felix Huettenbach ("Huettenbach") in the lawsuit *People v. Sameday Technologies, Inc. et al.*, Los Angeles County Superior Court Case No. 22STCV13180.  To the extent that the allegations in this paragraph purport to summarize, quote, or otherwise derive from a document, such document speaks for itself, and Corporate Defendants deny any characterization of its contents that are inconsistent with its text.  Corporate Defendants are without sufficient information to admit or deny the remaining allegations therein, and on that basis deny each and every remaining allegation contained therein.

15.     Answering paragraph 15 of the SAC, Corporate Defendants admit that a final judgment and permanent injunction was entered against Sameday and Huttenbach on April 29, 2022.  To the extent that the allegations in this paragraph purport to summarize, quote, or otherwise derive from a document, such document speaks for itself, and Corporate Defendants deny any characterization of its contents that are inconsistent with its text.

16.     Answering paragraph 16 of the SAC, the allegations in this paragraph purport to summarize, quote, or otherwise derive from a document.  Such document speaks for itself, and Corporate Defendants deny any characterization of its contents that are inconsistent with its text.  To the extent the allegations in this paragraph assert legal conclusions, no response is required.  To the extent a response is deemed required, Corporate Defendants deny each and every allegation contained in this paragraph.

17.     Answering paragraph 17 of the SAC, the allegations in this paragraph purport to summarize, quote, or otherwise derive from a document.  Such document speaks for itself, and Corporate Defendants deny any characterization of its contents that are inconsistent with its text.  To the extent the allegations in this paragraph

-5-

assert legal conclusions, no response is required.  To the extent a response is deemed required, Corporate Defendants deny each and every allegation contained in this paragraph.

18.    Answering paragraph 18 of the SAC, the allegations in this paragraph purport to summarize, quote, or otherwise derive from a document.  Such document speaks for itself, and Corporate Defendants deny any characterization of its contents that are inconsistent with its text.  To the extent the allegations in this paragraph assert legal conclusions, no response is required.  To the extent a response is deemed required, Corporate Defendants deny each and every allegation contained in this paragraph.

19.    Answering paragraph 19 of the SAC, Corporate Defendants admit the allegations contained therein.

20.    Answering paragraph 20 of the SAC, Corporate Defendants admit that Sameday and SDI signed a Mutual Confidentiality and Non-Disclosure Agreement. To the extent that the allegations in this paragraph purport to summarize, quote, or otherwise derive from a document, such document speaks for itself, and Corporate Defendants deny any characterization of its contents that are inconsistent with its text.

21.    Answering paragraph 21 of the SAC, the allegations in this paragraph purport to summarize, quote, or otherwise derive from a document.  Such document speaks for itself, and Corporate Defendants deny any characterization of its contents that are inconsistent with its text.  To the extent the allegations in this paragraph assert legal conclusions, no response is required.  To the extent a response is deemed required, Defendants deny each and every allegation contained in this paragraph. Corporate Defendants

22.    Answering paragraph 22 of the SAC, the allegations in this paragraph purport to summarize, quote, or otherwise derive from a document.  Such document speaks for itself, and Corporate Defendants deny any characterization of its contents

that are inconsistent with its text.  To the extent the allegations in this paragraph assert legal conclusions, no response is required.  To the extent a response is deemed required, Defendants deny each and every allegation contained in this paragraph.

23.    Answering paragraph 23 of the SAC, Corporate Defendants are without sufficient information to admit or deny the allegations therein, and on that basis deny each and every allegation contained therein.

24.    Answering paragraph 24 of the SAC, Corporate Defendants are without sufficient information to admit or deny the allegations therein, and on that basis deny each and every allegation contained therein.

25.    Answering paragraph 25 of the SAC, Corporate Defendants are without sufficient information to admit or deny the allegations therein, and on that basis deny each and every allegation contained therein.

26.    Answering paragraph 26 of the SAC, Corporate Defendants are without sufficient information to admit or deny the allegations therein, and on that basis deny each and every allegation contained therein.

27.    Answering paragraph 27 of the SAC, to the extent the allegations in this paragraph assert legal conclusions, no response is required.  To the extent a response is deemed required, Corporate Defendants deny those allegations.  As to all remaining allegations in paragraph 27, Corporate Defendants deny each and every allegation contained therein.

28.    Answering paragraph 28 of the SAC, to the extent the allegations in this paragraph assert legal conclusions, no response is required.  To the extent a response is deemed required, Corporate Defendants are without sufficient information to admit or deny the allegations therein, and on that basis deny each and every allegation contained therein.  As to all remaining allegations in paragraph 28, Corporate Defendants deny each and every allegation contained therein.

29.    Answering paragraph 29 of the SAC, Corporate Defendants admit only that representatives of Sameday and SDI met on or about September 15, 2022.  To

the extent the allegations in this paragraph assert legal conclusions, no response is
required.  To the extent a response is deemed required, Corporate Defendants are
without sufficient information to admit or deny the remaining allegations therein,
and on that basis deny each and every remaining allegation contained therein.

30.    Answering paragraph 30 of the SAC, Corporate Defendants are without
sufficient information to admit or deny the allegations therein, and on that basis
deny each and every allegation contained therein.

31.    Answering paragraph 31 of the SAC, Corporate Defendants are without
sufficient information to admit or deny the allegations therein, and on that basis
deny each and every allegation contained therein.

32.    Answering paragraph 32 of the SAC, to the extent the allegations in
this paragraph assert legal conclusions, no response is required.  To the extent a
response is deemed required, Corporate Defendants are without sufficient
information to admit or deny the allegations therein, and on that basis deny each and
every allegation contained therein.  As to all remaining allegations in paragraph 32,
Corporate Defendants deny each and every allegation contained therein.

33.    Answering paragraph 33 of the SAC, Corporate Defendants are without
sufficient information to admit or deny the allegations therein, and on that basis
deny each and every allegation contained therein.  As to all remaining allegations in
paragraph 33, Corporate Defendants deny each and every allegation contained
therein.

34.    Answering paragraph 34 of the SAC, Corporate Defendants admit only
that representatives of Sameday and SDI met on or about September 22, 2022.  To
the extent the allegations in this paragraph assert legal conclusions, no response is
required.  To the extent a response is deemed required, Corporate Defendants are
without sufficient information to admit or deny the allegations therein, and on that
basis deny each remaining allegation contained therein.  As to all remaining

ANSWER TO SAC AND COUNTERCLAIMS

allegations in paragraph 34, Corporate Defendants deny each and every allegation contained therein.

35.     Answering paragraph 35 of the SAC, Corporate Defendants deny each and every allegation contained therein.

36.     Answering paragraph 36 of the SAC, Corporate Defendants admit only that a special drop box was created for SDI to share information with Sameday as part of the due diligence process.  To the extent the allegations in this paragraph assert legal conclusions, no response is required.  To the extent a response is deemed required, Corporate Defendants deny each remaining allegation contained therein.

37.     Answering paragraph 37 of the SAC, to the extent that the allegations in this paragraph purport to summarize, quote, or otherwise derive from a document. Such document speaks for itself, and Corporate Defendants deny any characterization of its contents that are inconsistent with its text.  As to all remaining allegations in paragraph 37, Corporate Defendants deny each and every allegation contained therein.

38.     Answering paragraph 38 of the SAC, Corporate Defendants are without sufficient information to admit or deny the allegations therein, and on that basis deny each and every allegation contained therein.

39.     Answering paragraph 39 of the SAC, Corporate Defendants are without sufficient information to admit or deny the allegations therein, and on that basis deny each and every allegation contained therein.  To the extent the allegations in this paragraph assert legal conclusions, no response is required.  To the extent a response is deemed required, Defendants deny each and every allegation contained in this paragraph.

40.     Answering paragraph 40 of the SAC, Corporate Defendants are without sufficient information to admit or deny the allegations therein, and on that basis deny each and every allegation contained therein.

41.    Answering paragraph 41 of the SAC, to the extent the allegations in this paragraph assert legal conclusions, no response is required.  To the extent a response is deemed required, Corporate Defendants are without sufficient information to admit or deny the allegations therein, and on that basis deny each and every allegation contained therein.  As to all remaining allegations in paragraph 41, Corporate Defendants deny each and every allegation contained therein.

42.    Answering paragraph 42 of the SAC, the allegations in this paragraph purport to summarize, quote, or otherwise derive from a document.  Such document speaks for itself, and Corporate Defendants deny any characterization of its contents that are inconsistent with its text.  To the extent the allegations in this paragraph assert legal conclusions, no response is required.  To the extent a response is deemed required, Defendants deny each and every allegation contained in this paragraph.

43.    Answering paragraph 43 of the SAC, Corporate Defendants admit only that Fundamentum was the company designated to acquire SDI in the proposed transaction.  Corporate Defendants deny each and every remaining allegation contained therein.

44.    Answering paragraph 44 of the SAC, Corporate Defendants admit only that representatives of Sameday met with SDI and SDI's broker on or about October 18, 2022.  Corporate Defendants are without sufficient information to admit or deny the allegations therein, and on that basis deny each and every allegation contained therein.

45.    Answering paragraph 45 of the SAC, Corporate Defendants deny each and every allegation contained therein.

46.    Answering paragraph 46 of the SAC, deny each and every allegation contained therein.

47.    Answering paragraph 47 of the SAC, to the extent the allegations in this paragraph assert legal conclusions, no response is required.  To the extent a response is deemed required, Corporate Defendants deny each and every allegation

1   contained therein.  As to all remaining allegations in paragraph 47, Corporate
2   Defendants deny each and every allegation contained therein.

3        48.    Answering paragraph 48 of the SAC, Corporate Defendants are without
4   sufficient information to admit or deny the allegations regarding Mr. Mohiuddin
5   therein, and on that basis deny each and every allegation contained therein.   As to
6   all remaining allegations in paragraph 48, Corporate Defendants deny each and
7   every allegation contained therein.

8        49.    Answering paragraph 49 of the SAC, the allegations in this paragraph
9   purport to summarize, quote, or otherwise derive from a document.  Such document
10  speaks for itself, and Corporate Defendants deny any characterization of its contents
11  that are inconsistent with its text.  To the extent any further response is deemed
12  required, Defendants deny each and every allegation contained in this paragraph.
13  As to all remaining allegations in paragraph 49, Corporate Defendants deny each
14  and every allegation contained therein.

15       50.    Answering paragraph 50 of the SAC, Corporate Defendants admit only
16  that SDI and Fundamentum executed a Term Sheet on November 30, 2022.  To the
17  extent that the allegations in this paragraph purport to summarize, quote, or
18  otherwise derive from a document, such document speaks for itself, and Corporate
19  Defendants deny any characterization of its contents that are inconsistent with its
20  text.  To the extent the allegations in this paragraph assert legal conclusions, no
21  response is required.  To the extent a response is deemed required, Defendants deny
22  each and every allegation contained in this paragraph.  As to all remaining
23  allegations in paragraph 50, Corporate Defendants deny each and every allegation
24  contained therein.

25       51.    Answering paragraph 51 of the SAC, the allegations in this paragraph
26  purport to summarize, quote, or otherwise derive from a document, such document
27  speaks for itself, and Corporate Defendants deny any characterization of its contents
28

that are inconsistent with its text. Corporate Defendants deny each and every remaining allegation contained therein.

52. Answering paragraph 52 of the SAC, the allegations in this paragraph purport to summarize, quote, or otherwise derive from a document, such document speaks for itself, and Corporate Defendants deny any characterization of its contents that are inconsistent with its text. Corporate Defendants are without sufficient information to admit or deny the remaining allegations therein, and on that basis deny each and every allegation contained therein.

53. Answering paragraph 53 of the SAC, Corporate Defendants deny that DSI sent valuable trade secret information concerning the insurance payors. Corporate Defendants are without sufficient information to admit or deny the remaining allegations therein, and on that basis deny each and every allegation contained therein.

54. Answering paragraph 54 of the SAC, the allegations in this paragraph purport to summarize, quote, or otherwise derive from a document, such document speaks for itself, and Corporate Defendants deny any characterization of its contents that are inconsistent with its text. As to all remaining allegations in paragraph 54, Corporate Defendants deny each and every allegation contained therein.

55. Answering paragraph 55 of the SAC, Corporate Defendants are without sufficient information to admit or deny the allegations therein, and on that basis deny each and every allegation contained therein.

56. Answering paragraph 56 of the SAC, Corporate Defendants deny that "change of ownership" notifications were sent to insurance carriers. Corporate Defendants are without sufficient information to admit or deny the remaining allegations therein, and on that basis deny each and every allegation contained therein. As to all remaining allegations in paragraph 56, Corporate Defendants deny each and every allegation contained therein.

57.     Answering paragraph 57 of the SAC, to the extent the allegations in this paragraph assert legal conclusions, no response is required.  To the extent a response is deemed required, Corporate Defendants are without sufficient information to admit or deny the allegations therein, and on that basis deny each and every allegation contained therein.  As to all remaining allegations in paragraph 57, Corporate Defendants deny each and every allegation contained therein.

58.     Answering paragraph 58 of the SAC, Corporate Defendants admit only that SDI shared the test menu of COVID-19, Flu a, Flu b, RSV Combo test on or about December 10, 2022.  To the extent the allegations in this paragraph assert legal conclusions, no response is required.  To the extent a response is deemed required, Corporate Defendants are without sufficient information to admit or deny the allegations therein, and on that basis deny each and every allegation contained therein.

59.     Answering paragraph 59 of the SAC, to the extent the allegations in this paragraph assert legal conclusions, no response is required.  To the extent a response is deemed required, Corporate Defendants deny each and every allegation contained therein.

60.     Answering paragraph 60 of the SAC, Corporate Defendants deny each and every allegation contained therein.

61.     Answering paragraph 61 of the SAC, Corporate Defendants deny each and every allegation contained therein.

62.     Answering paragraph 62 of the SAC, Corporate Defendants deny each and every allegation contained therein.

63.     Answering paragraph 63 of the SAC, the allegations in this paragraph purport to summarize, quote, or otherwise derive from a document, such document speaks for itself, and Corporate Defendants deny any characterization of its contents that are inconsistent with its text.  Corporate Defendants are without sufficient information to admit or deny the remaining allegations therein, and on that basis

deny each and every allegation contained therein.  As to all remaining allegations in paragraph 63, Corporate Defendants deny each and every allegation contained therein.

64.    Answering paragraph 64 of the SAC, the allegations in this paragraph purport to summarize, quote, or otherwise derive from a document, such document speaks for itself, and Corporate Defendants deny any characterization of its contents that are inconsistent with its text.  Corporate Defendants are without sufficient information to admit or deny the remaining allegations therein, and on that basis deny each and every allegation contained therein.

65.    Answering paragraph 65 of the SAC, Corporate Defendants are without sufficient information to admit or deny the allegations therein, and on that basis deny each and every allegation contained therein.

66.    Answering paragraph 66 of the SAC, to the extent to the extent the allegations in this paragraph assert legal conclusions, no response is required.  To the extent a response is deemed required, Corporate Defendants are without sufficient information to admit or deny the allegations therein, and on that basis deny each and every allegation contained therein.

67.    Answering paragraph 67 of the SAC, the allegations in this paragraph purport to summarize, quote, or otherwise derive from a document, such document speaks for itself, and Corporate Defendants deny any characterization of its contents that are inconsistent with its text.  Corporate Defendants are without sufficient information to admit or deny the remaining allegations therein, and on that basis deny each and every allegation contained therein.

68.    Answering paragraph 68 of the SAC, the allegations in this paragraph purport to summarize, quote, or otherwise derive from a document, such document speaks for itself, and Corporate Defendants deny any characterization of its contents that are inconsistent with its text.  Corporate Defendants are without sufficient

1  information to admit or deny the remaining allegations therein, and on that basis

2  deny each and every allegation contained therein.

3         69.    Answering paragraph 69 of the SAC, the allegations in this paragraph

4  purport to summarize, quote, or otherwise derive from a document, such document

5  speaks for itself, and Corporate Defendants deny any characterization of its contents

6  that are inconsistent with its text.  Corporate Defendants are without sufficient

7  information to admit or deny the remaining allegations therein, and on that basis

8  deny each and every allegation contained therein.

9         70.    Answering paragraph 70 of the SAC, to the extent the allegations in

10  this paragraph assert legal conclusions, no response is required.  To the extent a

11  response is deemed required, Corporate Defendants are without sufficient

12  information to admit or deny the allegations therein, and on that basis deny each and

13  every allegation contained therein.

14        71.    Answering paragraph 71 of the SAC, the allegations in this paragraph

15  purport to summarize, quote, or otherwise derive from a document.  Such document

16  speaks for itself, and Corporate Defendants deny any characterization of its contents

17  that are inconsistent with its text.

18        72.    Answering paragraph 72 of the SAC, the allegations in this paragraph

19  purport to summarize, quote, or otherwise derive from a document.  Such document

20  speaks for itself, and Corporate Defendants deny any characterization of its contents

21  that are inconsistent with its text.

22        73.    Answering paragraph 73 of the SAC, the allegations in this paragraph

23  purport to summarize, quote, or otherwise derive from a document.  Such document

24  speaks for itself, and Corporate Defendants deny any characterization of its contents

25  that are inconsistent with its text.

26        74.    Answering paragraph 74 of the SAC, the allegations in this paragraph

27  purport to summarize, quote, or otherwise derive from a document.  Such document

28

speaks for itself, and Corporate Defendants deny any characterization of its contents
that are inconsistent with its text.

75.    Answering paragraph 75 of the SAC, the allegations in this paragraph
purport to summarize, quote, or otherwise derive from a document.  Such document
speaks for itself, and Corporate Defendants deny any characterization of its contents
that are inconsistent with its text.

76.    Answering paragraph 76 of the SAC, the allegations in this paragraph
purport to summarize, quote, or otherwise derive from a document.  Such document
speaks for itself, and Corporate Defendants deny any characterization of its contents
that are inconsistent with its text.

77.    Answering paragraph 77 of the SAC, the allegations in this paragraph
purport to summarize, quote, or otherwise derive from a document.  Such document
speaks for itself, and Corporate Defendants deny any characterization of its contents
that are inconsistent with its text.

78.    Answering paragraph 78 of the SAC, Corporate Defendants are without
sufficient information to admit or deny the allegations therein, and on that basis
deny each and every allegation contained therein.

79.    Answering paragraph 79 of the SAC, Corporate Defendants are without
sufficient information to admit or deny the allegations regarding Plaintiff's
motivation, and on that basis deny each and every allegation contained therein.  As
to all remaining allegations in paragraph 79, Corporate Defendants deny each and
every allegation contained therein.

80.    Answering paragraph 80 of the SAC, the allegations in this paragraph
purport to summarize, quote, or otherwise derive from a document.  Such document
speaks for itself, and Corporate Defendants deny any characterization of its contents
that are inconsistent with its text.  Corporate Defendants are without sufficient
information to admit or deny the remaining allegations therein, and on that basis
deny each and every allegation contained therein.

-16-

81.     Answering paragraph 81 of the SAC, Corporate Defendants deny each and every allegation contained therein.

82.     Answering paragraph 82 of the SAC, Corporate Defendants deny each and every allegation contained therein.

83.     Answering paragraph 83 of the SAC, Corporate Defendants deny each and every allegation contained therein.

84.     Answering paragraph 84 of the SAC, Corporate Defendants are without sufficient information to admit or deny the allegations therein, and on that basis deny each and every allegation contained therein.

85.     Answering paragraph 85 of the SAC, Corporate Defendants deny that there was a breach of any NDA.  Corporate Defendants are without sufficient information to admit or deny the remaining allegations therein, and on that basis deny each and every remaining allegation contained therein.

86.     Answering paragraph 86 of the SAC, the allegations in this paragraph purport to summarize, quote, or otherwise derive from a document.  Such document speaks for itself, and Corporate Defendants deny any characterization of its contents that are inconsistent with its text.  Corporate Defendants deny that the new merger agreement was inconsistent with the original Term Sheet and had numerous onerous additional conditions.  Corporate Defendants are without sufficient information to admit or deny the remaining allegations therein, and on that basis deny each and every allegation contained therein.

87.     Answering paragraph 87 of the SAC, the allegations in this paragraph purport to summarize, quote, or otherwise derive from a document.  Such document speaks for itself, and Corporate Defendants deny any characterization of its contents that are inconsistent with its text.

88.     Answering paragraph 88 of the SAC, Corporate Defendants deny that the merger agreement was "a change in direction by Fundamentum."  Corporate Defendants are without sufficient information to admit or deny the remaining

-17-

allegations therein, and on that basis deny each and every allegation contained therein.

89.    Answering paragraph 89 of the SAC, Corporate Defendants are without sufficient information to admit or deny the allegations therein, and on that basis deny each and every allegation contained therein.

90.    Answering paragraph 90 of the SAC, Corporate Defendants are without sufficient information to admit or deny the allegations therein, and on that basis deny each and every allegation contained therein.

91.    Answering paragraph 91 of the SAC, the allegations in this paragraph purport to summarize, quote, or otherwise derive from a document.  Such document speaks for itself, and Corporate Defendants deny any characterization of its contents that are inconsistent with its text.  Corporate Defendants are without sufficient information to admit or deny the remaining allegations therein, and on that basis deny each and every allegation contained therein.

92.    Answering paragraph 92 of the SAC, Corporate Defendants admit that counsel for Fundamentum sent certain documents to SDI's counsel on February 22, 2023.  To the extent that the allegations in this paragraph purport to summarize, quote, or otherwise derive from a document.  Such document speaks for itself, and Corporate Defendants deny any characterization of its contents that are inconsistent with its text.  As to all remaining allegations in paragraph 92, Corporate Defendants deny each and every allegation contained therein.

93.    Answering paragraph 93 of the SAC, the allegations in this paragraph purport to summarize, quote, or otherwise derive from a document.  Such document speaks for itself, and Corporate Defendants deny any characterization of its contents that are inconsistent with its text.

94.    Answering paragraph 94 of the SAC, Corporate Defendants admit that certain documents were sent on March 2, 2023.  To the extent that the allegations in this paragraph purport to summarize, quote, or otherwise derive from a document.

Such document speaks for itself, and Corporate Defendants deny any characterization of its contents that are inconsistent with its text. As to all remaining allegations in paragraph 92, Corporate Defendants deny each and every allegation contained therein.

95. Answering paragraph 95 of the SAC, the allegations in this paragraph purport to summarize, quote, or otherwise derive from a document. Such document speaks for itself, and Corporate Defendants deny any characterization of its contents that are inconsistent with its text.

96. Answering paragraph 96 of the SAC, the allegations in this paragraph purport to summarize, quote, or otherwise derive from a document. Such document speaks for itself, and Corporate Defendants deny any characterization of its contents that are inconsistent with its text.

97. Answering paragraph 97 of the SAC, the allegations in this paragraph purport to summarize, quote, or otherwise derive from a document. Such document speaks for itself, and Corporate Defendants deny any characterization of its contents that are inconsistent with its text. No answer is required as to the remaining statements, because the statements contained therein are not factual allegations.

98. Answering paragraph 98 of the SAC, the allegations in this paragraph purport to summarize, quote, or otherwise derive from a document. Such document speaks for itself, and Corporate Defendants deny any characterization of its contents that are inconsistent with its text.

99. Answering paragraph 99 of the SAC, Corporate Defendants deny that "SDI's Confidential Information was and is spread out to various Same Day affiliates." Corporate Defendants are without sufficient information to admit or deny the remaining allegations therein, and on that basis deny each and every allegation contained therein.

100. Answering paragraph 100 of the SAC, Corporate Defendants deny that the attempted acquisition mortally wounded SDI and that Corporate Defendants'

-19-

actions affected SDI such that it was no longer a marketable company.  Corporate Defendants are without sufficient information to admit or deny the remaining allegations therein, and on that basis deny each and every allegation contained therein.

101.   Answering paragraph 101 of the SAC, the allegations in this paragraph purport to summarize, quote, or otherwise derive from a document.  Such document speaks for itself, and Corporate Defendants deny any characterization of its contents that are inconsistent with its text.

102.   Answering paragraph 102 of the SAC, the allegations in this paragraph purport to summarize, quote, or otherwise derive from a document.  Such document speaks for itself, and Corporate Defendants deny any characterization of its contents that are inconsistent with its text.

103.   Answering paragraph 103 of the SAC, the allegations in this paragraph purport to summarize, quote, or otherwise derive from a document.  Such document speaks for itself, and Corporate Defendants deny any characterization of its contents that are inconsistent with its text.

104.   Answering paragraph 104 of the SAC, Corporate Defendants are without sufficient information to admit or deny the allegations therein, and on that basis deny each and every allegation contained therein.

105.   Answering paragraph 105 of the SAC, the allegations in this paragraph purport to summarize, quote, or otherwise derive from a document.  Such document speaks for itself, and Corporate Defendants deny any characterization of its contents that are inconsistent with its text.

## FIRST CAUSE OF ACTION

## MISAPPROPRIATION OF TRADE SECRETS

106.   Answering paragraph 106 of the SAC, Corporate Defendants incorporate their responses to Paragraphs 1 through 105.

107.    Answering paragraph 107 of the SAC, the allegations in this paragraph assert legal conclusions, to which no response is required.  To the extent a response is deemed required, Corporate Defendants deny each and every allegation contained therein.

108.    Answering paragraph 108 of the SAC, the allegations in this paragraph assert legal conclusions, to which no response is required.  To the extent a response is deemed required, Corporate Defendants deny each and every allegation contained therein.

109.    Answering paragraph 109 of the SAC, the allegations in this paragraph assert legal conclusions, to which no response is required.  Corporate Defendants are without sufficient information to admit or deny the remaining allegations therein, and on that basis deny each and every allegation contained therein.

110.    Answering paragraph 110 of the SAC, the allegations in this paragraph assert legal conclusions, to which no response is required.  To the extent a response is deemed required, Corporate Defendants deny that Corporate Defendants took trade secret client lists.  Corporate Defendants are without sufficient information to admit or deny the remaining allegations therein, and on that basis deny each and every allegation contained therein.

111.    Answering paragraph 112 of the SAC, Corporate Defendants deny each and every allegation contained therein.

112.    Answering paragraph 111 of the SAC, Corporate Defendants deny that Corporate Defendants' actions caused Plaintiff to lose the benefit of the negotiated rates that Plaintiff had been receiving from the various insurers and/or to incur costs associated with trying to re-negotiate insurance contracts.  Corporate Defendants are without sufficient information to admit or deny whether Plaintiff is currently in the process of re-negotiating and re-acquiring these insurers, and on that basis deny said allegations.  No answer is required as to the remaining statements, because the statements contained therein are not factual allegations.

SMRH:4875-4685-9636.5                                                   ANSWER TO SAC AND COUNTERCLAIMS

113.   Answering paragraph 113 of the SAC, the allegations in this paragraph assert legal conclusions, to which no response is required.  Corporate Defendants are without sufficient information to admit or deny the remaining allegations therein, and on that basis deny each and every allegation contained therein.

114.   Answering paragraph 114 of the SAC, the allegations in this paragraph assert legal conclusions, to which no response is required.  To the extent a response is deemed required, Corporate Defendants admit that Sameday signed and NDA on September 15, 2022, and deny each and every remaining allegation contained therein.

115.   Answering paragraph 115 of the SAC, the allegations in this paragraph assert legal conclusions, to which no response is required.  The remaining allegations in this paragraph purport to summarize, quote, or otherwise derive from a document.  Such document speaks for itself, and Corporate Defendants deny any characterization of its contents that are inconsistent with its text.

116.   Answering paragraph 116 of the SAC, Corporate Defendants deny each and every allegation contained therein.

117.   Answering paragraph 117 of the SAC, the allegations in this paragraph assert legal conclusions, to which no response is required.  To the extent a response is deemed required, Corporate Defendants deny each and every allegation contained therein.

118.   Answering paragraph 118 of the SAC, the allegations in this paragraph assert legal conclusions, to which no response is required.  To the extent a response is deemed required, Corporate Defendants are without sufficient information to admit or deny the remaining allegations therein, and on that basis deny each and every allegation contained therein.

119.   Answering paragraph 119 of the SAC, the allegations in this paragraph assert legal conclusions, to which no response is required.  To the extent a response

is deemed required, Corporate Defendants deny each and every allegation contained
therein.

120.    Answering paragraph 120 of the SAC, the allegations in this paragraph
assert legal conclusions, to which no response is required.  To the extent a response
is deemed required, Corporate Defendants deny each and every allegation contained
therein.

121.    Answering paragraph 121 of the SAC, the allegations in this paragraph
assert legal conclusions, to which no response is required.  To the extent a response
is deemed required, Corporate Defendants deny each and every allegation contained
therein.

122.    Answering paragraph 122 of the SAC, the allegations in this paragraph
assert legal conclusions, to which no response is required.  To the extent a response
is deemed required, Corporate Defendants deny each and every allegation contained
therein.

123.    Answering paragraph 123 of the SAC, the allegations in this paragraph
assert legal conclusions, to which no response is required.  To the extent a response
is deemed required, Corporate Defendants deny each and every allegation contained
therein.

## PRAYER

124.    Answering the Prayer of the SAC, Corporate Defendants deny that
Plaintiff is entitled to any relief sought by the SAC.

## AFFIRMATIVE DEFENSES

Corporate Defendants assert the following affirmative defenses upon
information and belief:

## FIRST AFFIRMATIVE DEFENSE

(Failure to State a Cause of Action)

125.    The Complaint to state facts sufficient to constitute a cause of action
against Corporate Defendants.

## SECOND AFFIRMATIVE DEFENSE

(Readily Ascertainable)

126.   Plaintiff's claims are barred, in whole or in part, because the material in question is readily ascertainable by proper means.

## THIRD AFFIRMATIVE DEFENSE

(No Independent Economic Value)

127.   Plaintiff's claims are barred, in whole or in part, the material in question has no independent economic value.

## FOURTH AFFIRMATIVE DEFENSE

(Public Information)

128.   Plaintiff's claims are barred, in whole or in part, because the material in question is publicly available.

## FIFTH AFFIRMATIVE DEFENSE

(No Improper Means Used)

129.   Plaintiff's claims are barred, in whole or in part, because Plaintiff elected to share the material in question with Corporate Defendants pursuant to a non-disclosure agreement, and Corporate Defendants fully complied with the terms of said agreement.

## SIXTH AFFIRMATIVE DEFENSE

(Lack of Reasonable Efforts To Maintain Secrecy)

130.   Plaintiff's claims are barred, in whole or in part, because Plaintiff failed to maintain secrecy of the materials in question, which are therefore not entitled to trade secret (or similar proprietary information) protections.

## SEVENTH AFFIRMATIVE DEFENSE

(Information Independently Derived)

131.   Plaintiff's claims are barred, in whole or in part, because the material in question was independently derived by proper means.

-24-

## EIGHTH AFFIRMATIVE DEFENSE

### (Estoppel)

132.   Plaintiff has engaged in conduct and activities sufficient to estop Plaintiff from bringing the claims asserted in the Complaint against Corporate Defendants.

## NINTH AFFIRMATIVE DEFENSE

### (Waiver)

133.   The Complaint is barred on the ground that Plaintiff has engaged in conduct or activities sufficient to constitute a waiver of any alleged claims against Corporate Defendants.

## TENTH AFFIRMATIVE DEFENSE

### (Consent)

134.   The Complaint is barred on the ground that Plaintiff consented and agreed to the acts and omissions alleged in the Complaint to have resulted in SDI's alleged damages.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

135.   The Complaint is barred by the doctrine of unclean hands.

## TWELFTH AFFIRMATIVE DEFENSE

### (Lack of Damages/Speculative Damages)

136.   Plaintiff has not suffered any damages as a result of any actions taken by Corporate Defendants, and the future damages alleged by Plaintiff are entirely speculative and/or uncertain, and therefore not compensable.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Offset)

137.   Any purported damages allegedly caused by Corporate Defendants or monies owed by Corporate Defendants are subject to offset either partially or in full

because of damages caused by Plaintiff or amounts owed by Plaintiff to Corporate
Defendants.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Unjust Enrichment)

138.   Plaintiff would be unjustly enrichment if it recovered any of the
damages alleged in the Complaint from Corporate Defendants.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Mitigation of Damages)

139.   Plaintiff at all times at issue in the Complaint failed to take any or all
actions reasonable or necessary under the circumstances to avoid or reduce its
alleged damages, if any, and to the extent of such failure to mitigate, Plaintiff's
claims are barred.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Ratification)

140.   Plaintiff acknowledged, ratified, consented to, or acquiesced in the
alleged acts or omissions of Corporate Defendants, thus barring Plaintiff's recovery.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Assumption of the Risk)

141.   To the degree any injuries and damages were sustained by Plaintiff
(which Corporate Defendants deny), they were directly and legally caused and
contributed to by risks which were fully and actually known to Plaintiff, who fully
and actually appreciated the nature of such risks, and voluntarily assumed said risks
and the potential consequences thereof.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Lack of Agency)

142.   To the extent any agent of Corporate Defendants engaged in any
allegedly unlawful conduct, such conduct was done outside the course and scope of

such agent's authority.  Plaintiff is therefore barred from asserting any claim against Corporate Defendants arising out of said conduct.

## NINETEENTH AFFIRMATIVE DEFENSE

### (Additional Affirmative Defenses)

143.   Corporate Defendants presently have insufficient knowledge or information on which to form a belief as to whether they may have available additional, as yet unstated, affirmative defenses.  Corporate Defendants reserve the right to file an amended Answer to the Complaint asserting additional affirmative defenses in the event that discovery indicates such defenses are appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Corporate Defendants pray for relief as follows:

1.   That SDI takes nothing by way of the SAC on file herein;

2.   That the SAC be dismissed, in its entirety, with prejudice;

3.   That the Court award Corporate Defendants their reasonable attorney's fees and costs of suit incurred herein;

4.   That the Court grant such other and further relief to Corporate Defendants as it may deem just and proper.

Dated:  February 20, 2024          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By      /s/ Juthamas J. Suwatanapongched

DANIELLE VRABIE
JUTHAMAS J. SUWATANAPONGCHED
TARYN Q. MCPHERSON

Attorneys for Defendants
FUNDAMENTUM HEALTH, INC.,
SAMEDAY TECHNOLOGIES, LLC, and
QUICKMED DIAGNOSTICS, INC.

-27-

# COUNTERCLAIMS

Counter-Claimant Fundamentum, for its counterclaims against Counter-Defendants SDI, Ozman Mohiuddin ("Mohiuddin"), International Business Investment, Inc. d/b/a Manhattan Biz ("Manhattan Biz"), Shelton Edward Wicker, Esq., individually and d/b/a Wicker Law Group ("Wicker" or "Escrow Agent"), and ROES 1-10 (collectively, "Counter-Defendants"), alleges as follows:

## THE PARTIES

144.    Fundamentum is now, and during all relevant times has been, a corporation formed and existing under the laws of Delaware, authorized to do business in California, with its principal place of business in Venice, California.

145.    Fundamentum is informed and believes and based thereon alleges that SDI is now, and during all relevant times has been, a corporation formed and existing under the laws of the State of California, with its principal place of business in Garden Grove, California.

146.    Fundamentum is informed and believes and based thereon alleges that Mohiuddin is now, and during all relevant times has been, an individual residing in Huntington Beach, California.  Mohiuddin is the founder and CEO of SDI.  As stated herein, he has conducted business in Los Angeles County.

147.    Fundamentum is informed and believes and based thereon alleges that International Business Investment, Inc. d/b/a Manhattan Biz is now, and during all relevant times has been, a corporation formed and existing under the laws of California, with its principal place of business in Manhattan Beach, California.  Sasa Milosevic ("Milosevic") is the CEO, CFO, and sole director of Manhattan Biz, and at all times mentioned herein acted as the agent of Manhattan Biz within the course and scope of his agency.  Manhattan Biz acted as the broker for the proposed indirect acquisition of SDI by Fundamentum.

148.    Fundamentum is informed and believes and based thereon alleges that Wicker is now, and during all relevant times has been, an individual residing in San

-28-

Diego, California.  On information and belief, Wicker is the sole member owner of Wicker Law Group, an unincorporated entity with its principal place of business in San Diego, California.  As stated herein, Wicker has conducted business in Los Angeles County.

149.   Roes 1 through 10 are sued pursuant to Central District Local Rule 19-1.  Fundamentum is unaware of the true names and capacities of Counter-Defendants sued herein as Roes 1 through 10, inclusive, and therefore sues said Counter-Defendants by such fictitious names.  Fundamentum will amend its counterclaims to set forth the true names and capacities of said Counter-Defendants when the same has been ascertained.  Fundamentum is informed and believes and based thereon alleges that each of the fictitiously named Counter-Defendants are liable for the monetary obligations alleged herein or are otherwise responsible in some manner for the occurrences alleged herein, and that Fundamentum's damages, as herein alleged, were proximately caused by their conduct.

150.   Fundamentum is informed and believes and based thereon alleges that at all times mentioned herein, each Counter-Defendant was the agent, employee, or partners of each of the other Counter-Defendants and was acting within the course and scope of that agency, employment or partnership.

## **JURISDICTION**

151.   This Court has subject matter jurisdiction over Fundamentum's counterclaims pursuant to 28 U.S.C. § 1367, because the claims brought by Fundamentum arise out of the same transactions and occurrences that are alleged in the SAC, and therefore form a part of the same case or controversy within the meaning of Article III of the U.S. Constitution.

152.   Counter-Defendants are properly joined to this action under Federal Rules of Procedure 13(h) and 20, because Fundamentum asserts rights to relief against the Counter-Defendants jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or

-29-

occurrences, and questions of law and fact common to all Counter-Defendants will arise in the action.

153.   Counter-Defendants are subject to personal jurisdiction in this district.

154.   Venue for this action is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred is in this district, and Plaintiff filed the original action in Los Angeles County Superior Court before it was removed this Court.

### UNDERLYING FACTS

155.   On November 30, 2022, Fundamentum, SDI, and Mohiuddin, individually, executed a "Term Sheet for the Potential Acquisition of SDI Labs, Inc." ("Term Sheet").  A true and correct copy of the Term Sheet is attached hereto as **Exhibit 1**.

156.   The Term Sheet provided a summary of the principal terms of a proposed indirect acquisition of SDI by Fundamentum ("Proposed Transaction"). The Term Sheet contained non-binding terms and binding terms.

### Non-Binding Terms of the Term Sheet

157.   The Proposed Transaction or commitment on the part of any party to proceed with the Proposed Transaction was not legally binding.  Instead, the closing of the Proposed Transaction was conditioned on the parties executing one or more mutually agreed-to definitive agreements ("Definitive Agreements").  In addition, any future closing of the Proposed Transaction also required that the parties obtain certain third-party approvals.

158.   The Term Sheet provided

-30-

1 ▮▮▮▮  There were several other terms and conditions that needed to be satisfied

2 prior to any closing of the Proposed Transaction.

3 **Binding Provisions of the Term Sheet**

4     159.  The Term Sheet contained provisions regarding the deposit of funds

5 into an escrow that were legally binding on the parties:



19     160.  The Term Sheet also contained a confidentiality provision, which

20 provided:



                       ANSWER TO SAC AND COUNTERCLAIMS



161.

162.   After executing the Term Sheet, the parties engaged in diligence and negotiations regarding the Proposed Transaction.

### The Escrow Agreement

163.   On January 9, 2023, Wicker sent a draft escrow agreement ("Escrow Agreement") to Milosevic.

164.   Later that evening, Milosevic informed the parties that from his perspective the transaction "must have the effective closing on January 10, 2023." To effectuate the closing, Milosevic urged Felix Huettenbach ("Huettenbach"), Fundamentum's then-CEO, to sign both the Escrow Agreement and a proposed bill of sale.  He also urged Huettenbach to deposit additional funds for SDI's operating expenses—because SDI did not have the funds to pay its own expenses—pursuant to an alleged oral agreement, by the next day, January 10, 2023.

165.   Caving to the pressure from Milosevic, Huettenbach, on behalf of Fundamentum, signed the Escrow Agreement, as did Mohiuddin, on behalf of SDI, and Milosevic, on behalf of Mahattan Biz.

166.   The Escrow Agreement included escrow instructions for distribution (what amounts were payable to whom), but did not specify when the funds could be

-32-

released.  The Escrow Agreement further provided that Wicker had the option to
either "hold th[e] escrow open for [a] determination of the rights of the parties," or
initiate a court action to make such a determination.  The only closing date provided
was an escrow closing date of January 9, 2024—*i.e.*, the same day that it was
executed.

167.    The next day, Fundamentum contacted Wicker and halted the release of
the funds, because Huettenbach had signed the Escrow Agreement under pressure
and without first consulting Fundamentum and its counsel.  The Escrow Agreement
also did not unambiguously reflect the conditions set forth in the Term Sheet.
Specifically, the Term Sheet provided that █████████████████████████████
████████████████████████████████████████ while the Escrow
Agreement was silent regarding when distribution could occur.

168.    On January 10, 2023, Wicker, Milosevic, Huettenbach, and Mohiuddin,
as well as Sarah Thomas, in-house counsel to Fundamentum, and Travis Owen, the
Chief Financial Officer of Sameday, an affiliate of Fundamentum, participated in a
phone call to discuss the Escrow Agreement.  As the Proposed Transaction had not
yet closed—indeed, no Definitive Agreement had been entered into and parties were
still negotiating, Fundamentum and SDI agreed that the Deposit could only be
released once the merger agreement[2] was signed, ██████████████████████
Pursuant to this oral modification of the Escrow Agreement, Fundamentum agreed
to deposit an additional $150,000.00 for SDI's business operational costs, and
another $504,000.00 for closing purposes, and subsequently wired the funds to the

---

[2] ████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████

1    Account.  Wicker asked the parties to ███████████████████████

2    ████████████████████████████████████████████████████████████

3    ██████████████████████████████       A true and correct copy of the email

4    communications between Wicker, Milosevic, Huettenbach, Mohiuddin, Sarah

5    Thomas and Travis Owen dated January 9, 2023 through January 11, 2023 is

6    attached hereto as **Exhibit 2** and incorporated herein as though fully set forth.

7         169.   Despite his promise to update the escrow instructions to reflect the

8    parties' agreement, Wicker never did so.  Then, on February 2, 2023, although the

9    merger agreement had not been signed, and the transaction had not yet closed,

10   Wicker—***without Fundamentum's knowledge, consent, or authorization***—

11   distributed $2,782,000.00 to SDI and $210,000.00 to Manhattan Biz—their

12   respective post-closing allocations of the Deposit—from the Account.  A true and

13   correct copy of the email communications between Wicker, Milosevic, Huettenbach,

14   Mohiuddin, and Jeff Nelson, Sarah Thomas, and Travis Owen of Same Day, dated

15   March 24, 2023 through May 5, 2023, and the attached outgoing wire transfer

16   requests dated February 2, 2023, is attached hereto as **Exhibit 3** and incorporated

17   herein as though fully set forth.

18        **SDI Terminates Negotiations Regarding the Proposed Transaction**

19        170.   On March 24, 2023, Fundamentum's counsel sent an email to Wicker

20   and SDI's counsel, reminding them that the Deposit must remain in the Account

21   until the Proposed Transaction is closed ███████████████████  (Exh.

22   3.)

23        171.   The parties' negotiations came to a halt on or about April 13, 2023,

24   when SDI did not respond to or accept Fundamentum's revised offer to acquire SDI.

25   A true and correct copy of the email communications between SDI's counsel,

26   Fundamentum's counsel, Mohiuddin, and Sarah Thomas, dated March 24, 2023

27   through April 15, 2023 is attached hereto as **Exhibit 4**.

28

172.   The Proposed Transaction and the non-binding terms of the Term Sheet were never reduced to any Definitive Agreement and the Proposed Transaction never closed.

173.   ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ (Exh. 1.)

174.   On or about April 17, 2023, Fundamentum's counsel informed Wicker of the termination of the Proposed Transaction and sought return of its Deposit under the terms of the Term Sheet.  (Exh. 3.)  However, on or about May 5, 2023, Fundamentum's counsel learned—for the first time—that on or about February 2, 2023, Wicker had already disbursed $2,782,000.00 of the Deposit to SDI and $210,000.00 to Manhattan Biz.  SDI and Manhattan Biz had accepted and retained these funds in contravention of the Escrow Agreement, as modified, ████ ████████████████████████████████████████████

175.   Fundamentum demanded that SDI return all portions of the Deposit that SDI was wrongfully holding since the Proposed Transaction did not close and no Definitive Agreements were ever executed.

176.   From May 5, 2023 to May 22, 2023, counsel for Fundamentum and counsel for SDI had numerous phone calls discussing the Deposit.  Counsel for SDI gave no indication of its intent to file the instant lawsuit, and Fundamentum believed that SDI was negotiating in good faith to reach a resolution of the Deposit issue. Counsel for Fundamentum further informed counsel for SDI that it had not and would not use or disseminate any of the information SDI provided to Fundamentum or its affiliates in the course of the Proposed Transaction ("Confidential Information").

**SDI Summarily Files Suit and Breaches Its Confidentiality Obligations Under**
**the Term Sheet**

177.   On or about May 22, 2023, while counsel for Fundamentum and counsel for SDI were still negotiating regarding the Deposit and Confidential Information, SDI suddenly filed a public complaint in Los Angeles Superior Court Case No. 23SMCV02246 ("State Court Complaint") against Fundamentum, seeking to extract even more funds from Fundamentum without any basis.

178.   The State Court Complaint quoted extensively from the Term Sheet, and further quoted and referenced the parties' negotiations and communications regarding the Term Sheet.  SDI did not inform Corporate Defendants of its intent to file the State Court Complaint, much less its intent to disclose confidential information under the Term Sheet.

179.   On or about August 16, 2023, Corporate Defendants filed an application to file their motion to dismiss under seal, which application was granted by the United States District Court for the Central District of California on September 18, 2023.

180.   On or about October 10, 2023, SDI filed its First Amended Complaint, once more incorporating confidential communications in contravention of the Term Sheet and the Court's August 26, 2023 Order granting Corporate Defendants' application for leave to file under seal.

181.   To date, SDI has refused to return any portion of the Deposit.

**FIRST COUNTERCLAIM FOR BREACH OF CONTRACT – TERM SHEET**

(by Fundamentum against SDI and Mohiuddin)

182.   Fundamentum hereby realleges and incorporates by reference the allegations of each and every preceding paragraph as though fully set forth herein.

183.   The Term Sheet and the binding provisions therein are a valid, written contract between SDI, Mohiuddin, and Fundamentum.

-36-

184. 

Fundamentum has completed all of its obligations and conditions that it was required to perform under the Term Sheet, except for those obligations from which it was excused.

185.

186.

.

187. The Proposed Transaction never closed and no Definitive Agreement was ever executed by SDI and Fundamentum.

188. SDI terminated the Proposed Transaction when it did not accept or respond to Fundamentum's offer to acquire the assets of SDI. Accordingly, the Deposit should have been returned to Fundamentum.

189. On or about February 2, 2023, SDI received and kept $2,782,000.00 of the Deposit. This is a material breach of the Term Sheet.

190. On or about May 22, 2023, SDI filed the State Court Complaint, which quoted extensively from the Term Sheet, and further quoted and referenced the parties' negotiations and communications regarding the Term Sheet. SDI did not inform Corporate Defendants of its intent to file the State Court Complaint, much

less its intent to disclose confidential information under the Term Sheet.  This is a material breach of the Term Sheet.

191.   As a direct and proximate result of the breach of the Term Sheet, Fundamentum has suffered damages in the principal amount of $2,782,000.00, or some other amount to be proved at trial, plus accrued interest, as permitted by applicable law.

**SECOND COUNTERCLAIM FOR BREACH OF CONTRACT – ESCROW AGREEMENT**

(by Fundamentum against SDI, Wicker, and Manhattan Biz)

192.   Fundamentum hereby realleges and incorporates by reference the allegations of each and every preceding paragraph as though fully set forth herein.

193.   The Escrow Agreement, executed January 9, 2023, is a valid, written contract between Fundamentum, SDI, Wicker, and Manhattan Biz.

194.   On January 10, 2023, the parties orally modified the Escrow Agreement.  The oral modification was supported by new consideration, as Fundamentum agreed to, and did, wire an additional $150,000.00 for SDI's business operational costs and an additional $504,000.00 to the Account.  Although Wicker promised that he would revise the Escrow Agreement to reflect the parties' oral modification, he never did.

195.   Fundamentum has completed all of its obligations and conditions that it was required to perform under the Escrow Agreement, as modified, except for those obligations from which it was excused.

196.   Under the Escrow Agreement, as modified, the parties agreed that Wicker would not distribute, and SDI and Manhattan Biz would not accept, the Deposit until a Definitive Agreement was executed.  The Proposed Transaction never closed and no Definitive Agreement was ever executed by SDI and Fundamentum.

197.   On or about February 2, 2023, Wicker distributed $2,782,000.00 to SDI and $210,000.00 to Manhattan Biz of Deposit funds from the Account.  SDI and Manhattan Biz accepted the funds and never informed Fundamentum that the Deposit had been distributed; Fundamentum did not find out about the distributions until approximately three months later.

198.   As a direct and proximate result of the breach of the Escrow Agreement, Fundamentum has suffered damages in the principal amount of $2,992,000.00, or some other amount to be proved at trial, plus accrued interest, as permitted by applicable law.

### THIRD COUNTERCLAIM FOR PROMISSORY ESTOPPEL

#### (by Fundamentum against all Counter-Defendants)

199.   Fundamentum hereby realleges and incorporates by reference the allegations of each and every preceding paragraph as though fully set forth herein.

200.   On January 10, 2023, Wicker, Milosevic, and Mohiuddin, and Fundamentum agreed that the Deposit would only be released once the merger agreement was signed. ███████████████  Wicker promised that he would "update the escrow instructions to reflect the parties' agreement," but he never did.

201.   In reliance on the parties' agreement and Wicker's promise reflecting that agreement, Fundamentum did not take any further action to halt the release of the Deposit while the parties continued to negotiate.

202.   On February 2, 2023, Wicker nonetheless distributed $2,782,000.00 to SDI and $210,000.00 to Manhattan Biz from the Account.  SDI and Milosevic never informed Fundamentum that they had received the Deposit.

203.   On March 24, 2023, Fundamentum contacted Wicker to remind him that he could not distribute the Deposit until the transaction had closed.  At the time, Fundamentum believed that all of the Deposit remained in the Account.  Wicker did not inform Fundamentum that he had distributed the Deposit until May 5, 2023, three months after he made the distributions and over a month and a half after

-39-

Fundamentum contacted Wicker to remind him that he could not distribute the Deposit until the Definitive Agreement had been signed.

204.   Fundamentum's reliance on the parties' agreement and Wicker's promise reflecting that agreement was reasonable, because the Escrow Agreement was ambiguous as to when the Deposit could be released, and potentially at odds with the Term Sheet.  Accordingly, the parties' January 10, 2023 conversation clarified the Escrow Agreement's potential ambiguity, as reflected in Wicker's subsequent email to the parties.  In addition, Fundamentum did not believe any further written modification was necessary to protect its rights under the Escrow Agreement, because the parties' oral modification to the Escrow Agreement was supported by new consideration.  Moreover, the Escrow Agreement provides that, "[s]hould any disputes arise between parties interested in property or funds covered by these instructions," Wicker had the option to *either* "hold all matters pending in their existing status or to join in or commence a court action, or to bring an action in interpleader."  Fundamentum disputed the distributions on January 10, 2023, but Wicker did not hold the Deposit or commence a court action.  Instead, Wicker distributed the Deposit in contravention of the Escrow Agreement.

205.   Fundamentum's reliance on the parties' agreement and Wicker's promise reflecting that agreement was foreseeable, because the parties were bound by the Escrow Agreement, as modified, and Wicker owed a fiduciary duty of faithful performance and execution of the instructions given by the principals to the escrow.

206.   As a direct and proximate result of the Counter-Defendants' conduct, Fundamentum has suffered damages in the principal amount of $2,992,000.00, or some other amount to be proved at trial, plus accrued interest, as permitted by applicable law.

SMRH:4875-4685-9636.5                                                ANSWER TO SAC AND COUNTERCLAIMS

## FOURTH COUNTERCLAIM FOR CONVERSION

(by Fundamentum against all Counter-Defendants)

207.   Fundamentum hereby realleges and incorporates by reference the allegations of each and every preceding paragraph as though fully set forth herein.

208.   Fundamentum, at all relevant times, was and is the sole owner of, legally and equitably, with all right, title, and interest to, the Deposit.

209.   On or about February 2, 2023, Wicker intentionally and wrongfully converted $2,992,000.00 of the Deposit when he distributed the Deposit without Fundamentum's consent, and in contravention of the instructions Wicker received from the parties.

210.   On or about February 2, 2023, SDI, Mohiuddin, Manhattan Biz, and intentionally and wrongfully converted $2,992,000.00 of the Deposit when SDI and Manhattan Biz received and kept the Deposit funds they received from Wicker.

211.   Fundamentum demanded return of its property, the $2,992,000.00 of the Deposit.  Instead of returning Fundamentum's funds, SDI sued Fundamentum, seeking even more funds without basis.

212.   As a direct and proximate result of Counter-Defendants' conversion of Fundamentum's property, Fundamentum has suffered damages in the amount of $2,992,000.00 plus accruing interest.

213.   In doing the acts and things alleged above, Counter-Defendants acted with malice, oppression and/or fraud as defined in California Civil Code Section 3294(c), *e.g.*, willfully and with the intent to deprive Fundamentum of its property, thereby warranting an award of punitive damages in an amount appropriate to punish the Counter-Defendants and deter others from engaging in similar misconduct.

## FOURTH COUNTERCLAIM FOR VIOLATION OF

## CALIFORNIA PENAL CODE SECTION 496

(by Fundamentum against all Counter-Defendants)

214.   Fundamentum hereby realleges and incorporates by reference the allegations of each and every preceding paragraph as though fully set forth herein.

215.   Fundamentum, at all relevant times, was and is the sole owner of, legally and equitably, with all right, title, and interest to, the Deposit.

216.   Counter-Defendants, through their actions and/or omissions wrongfully took, misappropriated, diverted, received, concealed, and/or withheld, or aided in taking, misappropriating, diverting, receiving, concealing, and/or withholding, portions of the Deposit that rightfully belong to Fundamentum, in violation of California Penal Code Section 496.

217.   As a direct and proximate result of Counter-Defendants' misappropriation, receipt, and concealment of Fundamentum's funds, Fundamentum has suffered damages in the amount of $2,992,000.00 plus accruing interest.

218.   By reason of the acts of Counter-Defendants, Fundamentum is entitled to treble damages and attorneys' fees in accordance with the provisions of California Penal Code section 496(c).

## FIFTH COUNTERCLAIM FOR MONEY HAD AND RECEIVED

(by Fundamentum against all Counter-Defendants)

219.   Fundamentum hereby realleges and incorporates by reference the allegations of each and every preceding paragraph as though fully set forth herein.

220.   Fundamentum, at all relevant times, was and is the sole owner of, legally and equitably, with all right, title, and interest to, the Deposit.

221.   Counter-Defendants became indebted to Fundamentum in sum of at least $2,992,000.00 for money had and received by Counter-Defendants for the use and benefit of Counter-Defendants.

222.  Neither the whole or any part of the Deposit has been paid, although demand has been made, and there is now due, owing and unpaid the sum of $2,992,000.00 together with interest thereon at the legal rate.

## SIXTH COUNTERCLAIM FOR BREACH OF FIDUCIARY DUTY

### (by Fundamentum against Wicker)

223.  Fundamentum hereby realleges and incorporates by reference the allegations of each and every preceding paragraph as though fully set forth herein.

224.  Wicker, as the escrow agent for the Proposed Transaction, owed a fiduciary duty to the escrow's principals, Fundamentum and SDI, of faithful performance and execution of the instructions given by the principals, as well as a duty to disclose to the principals all matters that are material to the principals.

225.  Pursuant to the Escrow Agreement, as modified, Fundamentum and SDI instructed Wicker to refrain from distributing the Deposit until the Definitive Agreement had been signed.

226.  On or about February 2, 2023, Wicker intentionally and wrongfully distributed $2,992,000.00 of the Deposit without Fundamentum's consent, and in contravention of his instructions.  Wicker did not inform Fundamentum that he had made any distributions until May 5, 2023.

227.  As a direct and proximate result of the Counter-Defendants' conduct, Fundamentum has suffered damages in the principal amount of $2,992,000.00, or some other amount to be proved at trial, plus accrued interest, as permitted by applicable law.

228.  In doing the acts and things alleged above, Wicker acted with malice, oppression and/or fraud as defined in California Civil Code Section 3294(c), *e.g.*, willfully and with the intent to deprive Fundamentum of its property, thereby warranting an award of punitive damages in an amount appropriate to punish Wicker and deter others from engaging in similar misconduct.

-43-

## SEVENTH COUNTERCLAIM FOR AIDING AND ABETTING BREACH OF
## FIDUCIARY DUTY

(by Fundamentum against SDI, Mohiuddin, and Manhattan Biz)

229.   Fundamentum hereby realleges and incorporates by reference the allegations of each and every preceding paragraph as though fully set forth herein.

230.   On or about February 2, 2023, Wicker intentionally and wrongfully distributed $2,782,000.00 to SDI and $210,000.00 to Manhattan Biz from the Account. without Fundamentum's consent, and in contravention of his instructions.

231.   SDI, Mohiuddin, and Manhattan Biz, as parties to the written and orally-modified Escrow Agreement, had actual knowledge of the Escrow Agreement, as modified.

232.   SDI, Mohiuddin, and Manhattan Biz substantially assisted and encouraged Wicker, in that one or all of them instructed Wicker to distribute the funds, and neither SDI, Mohiuddin, nor Manhattan Biz informed Fundamentum of the improper distributions upon receipt of the funds.

233.   Counter-Defendants' conduct was a substantial factor in causing harm to Fundamentum, in that one or all of them instructed Wicker to distribute the funds. Moreover, had Counter-Defendants informed Fundamentum of Wicker's intent to distribute the Deposit, they could have prevented Wicker's breach and Fundamentum's resulting damages.

234.   As a direct and proximate result of the Counter-Defendants' conduct, Fundamentum has suffered damages in the principal amount of $2,992,000.00, or some other amount to be proved at trial, plus accrued interest, as permitted by applicable law.

235.   In doing the acts and things alleged above, Counter-Defendants acted with malice, oppression and/or fraud as defined in California Civil Code Section 3294(c), *e.g.*, willfully and with the intent to deprive Fundamentum of its property, thereby warranting an award of punitive damages in an amount appropriate to

punish the Counter-Defendants and deter others from engaging in similar misconduct.

## EIGHTH CLAIM FOR PROFESSIONAL NEGLIGENCE

### (by Fundamentum against Wicker and Manhattan Biz)

236.    Fundamentum hereby realleges and incorporates by reference the allegations of each and every preceding paragraph as though fully set forth herein.

237.    Wicker, as the escrow agent for the Proposed Transaction, had a duty of faithful performance and execution of the instructions given by the principals of the escrow, Fundamentum and SDI, and to disclose all material matters to the principals.

238.    Manhattan Biz, as SDI's broker for the Proposed Transaction, had a duty to deal honestly and fairly with Fundamentum.

239.    On or about February 2, 2023, Wicker intentionally and wrongfully distributed $2,782,000.00 to SDI and $210,000.00 to Manhattan Biz from the Account, without Fundamentum's consent, and in contravention of the parties' instructions to Wicker.  Manhattan Biz did not inform Fundamentum that the Deposit had been distributed in contravention of the Escrow Agreement, as modified, to which it was a party.

240.    As a direct and proximate result of the Counter-Defendants' conduct, Fundamentum has suffered damages in the principal amount of $2,992,000.00, or some other amount to be proved at trial, plus accrued interest, as permitted by applicable law.

## PRAYER FOR RELIEF

WHEREFORE, Counter-Claimant prays for the following:

1.    For damages in the amount of $2,992,000.00 or some other amount according to proof at trial, together with interest thereon;

2.    For exemplary and punitive damages as appropriate;

3.    For treble damages pursuant to California Penal Code Section 496(c);

-45-

1        4.      For attorneys' fees pursuant to California Penal Code Section 496(c);

2        5.      For costs of suit incurred herein; and

3        6.      For such other and further relief as this Court may deem just and

4  proper.

5

6  Dated: February 20, 2024      SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

7                        By          */s/ Juthamas J. Suwatanapongched*

8                              DANIELLE VRABIE (*pro hac vice*)

9                            JUTHAMAS J. SUWATANAPONGCHED
                                TARYN Q. MCPHERSON

10

11                          Attorneys for Defendant and Counter-Claimant
                            FUNDAMENTUM HEALTH, INC.

12

13               **<u>DEMAND FOR JURY TRIAL</u>**

14      Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and Local

15  Rule 38-1, Defendant and Counter-Claimant Fundamentum Health, Inc. demands a

16  jury trial on all issues triable of right by a jury.

17

18  Dated: February 20, 2024      SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

19                        By          */s/ Juthamas J. Suwatanapongched*

20                              DANIELLE VRABIE (*pro hac vice*)

21                            JUTHAMAS J. SUWATANAPONGCHED
                                TARYN Q. MCPHERSON

22

23                          Attorneys for Defendant and Counter-Claimant
                            FUNDAMENTUM HEALTH, INC.

24

25

26

27

28

# EXHIBIT 1

[Filed in its Entirety Conditionally Under Seal]

# EXHIBIT 2

[Filed in its Entirety Conditionally Under Seal]

# EXHIBIT 3

[Filed in its Entirety Conditionally Under Seal]

# EXHIBIT 4

[Filed in its Entirety Conditionally Under Seal]