SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
JUTHAMAS J. SUWATANAPONGCHED, Cal. Bar No. 266313
TARYN Q. McPHERSON, Cal. Bar No. 329461
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone: 213-620-1780
Facsimile: 213-620-1398
jsuwatanapongched@sheppardmullin.com
tmcpherson@sheppardmullin.com

DANIELLE VRABIE (*pro hac vice)*
30 Rockefeller Plaza
New York, New York 10112-0015
Telephone: 212-653-8700
Facsimile: 212-653-9701
dvrabie@sheppardmullin.com

Attorneys for Defendant/Counter-Claimant
FUNDAMENTUM HEALTH, INC. and
Defendants SAMEDAY TECHNOLOGIES,
LLC, and QUICKMED DIAGNOSTICS,
INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| SDI LABS, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMEDAY TECHNOLOGIES, INC., a Delaware Corporation dba SAME DAY HEALTH, PRAESIDIUM DIAGNOSTICS LLC, dba SAME DAY HEALTH AND SAME DAY TESTING, FUNDAMENTUM HEALTH, INC., a Delaware Corporation, QUICKMED dba QUICK MEDDX, FELIX HUETTENBACH, an individual, and DOES 1 through 50, inclusive,<br><br>Defendants.<br><br>FUNDAMENTUM HEALTH, INC., a Delaware Corporation,<br><br>Counter-Claimant. | Case No. 2:23-cv-05619-MRA (MRWx)<br><br>**COUNTER-CLAIMANT FUNDAMENTUM'S OPPOSITION TO MANHATTAN BIZ'S MOTION TO DISMISS**<br><br>Date: May 30, 2024<br>Time: 1:30 p.m.<br>Ctrm: 10B<br><br>Complaint Filed: May 22, 2023<br>[Los Angeles County Superior Court Case No. 23SMCV02246]<br>Removal Date: July 12, 2023<br><br>**[REDACTED PUBLIC VERSION]** |

v.

SDI LABS, INC., a California corporation, OZMAN MOHIUDDIN, an individual, INTERNATIONAL BUSINESS INVESTMENT, INC. d/b/a MANHATTAN BIZ, a California corporation, SHELTON EDWARD WICKER, an individual and d/b/a WICKER LAW GROUP, and ROES 1 through 10, inclusive,

Counter-Defendants.

# TABLE OF CONTENTS


**Page**

I. INTRODUCTION .......... 1

II. SUMMARY OF ALLEGATIONS .......... 2

A. Fundamentum's Allegations .......... 2

B. Manhattan Biz's Motion to Dismiss .......... 4

III. LEGAL STANDARD .......... 5

IV. THE MOTION SHOULD BE DENIED. .......... 6

A. The Motion Relies Heavily on Extraneous Evidence That, Even if Considered, Does Not Warrant Dismissal of the Counterclaim. .......... 6

B. Fundamentum Has Stated a Counterclaim for Breach of Contract. .......... 8

C. Fundamentum Has Stated Counterclaims for Promissory Estoppel and Conversion in The Alternative. .......... 12

D. Fundamentum Has Stated a Counterclaim for Receipt of Stolen Property. .......... 16

E. Fundamentum Has Stated a Counterclaim For Aiding and Abetting Breach of Fiduciary Duty and Professional Negligence .......... 17

V. IF THE COURT GRANTS THE MOTION FOR ANY REASON, FUNDAMENTUM SHOULD BE GRANTED LEAVE TO AMEND. .......... 20

VI. CONCLUSION .......... 20

# TABLE OF AUTHORITIES

Page(s)

Cases

*Allure Labs, Inc. v. Markushevska*
606 B.R. 51 (N.D. Cal. 2019)....................16

*Am. Licorice Co. v. Total Sweeteners, Inc.*
2013 WL 4396778 (N.D. Cal. Aug. 13, 2013)....................9

*Amen v. Merced Cty. Title Co.*
58 Cal. 2d 528 (1962)....................9, 18

*Ashcroft v. Iqbal*
556 U.S. 662 (2009)....................5

*Bell v. Feibush*
212 Cal. App. 4th 1041 (2013)....................16

*Chase Inv. Servs. Corp.*
748 F. Supp. 2d 1145....................15

*Com. Point Cap., Inc. v. First Data Corp.*
2019 WL 7020057 (S.D. Cal. Dec. 20, 2019)....................12, 16

*Copeland v. Baskin Robbins U.S.A.*
96 Cal. App. 4th 1251 (2002)....................14

*Eminence Capital, LLC v. Aspeon, Inc.*
316 F.3d 1048 (9th Cir. 2003)....................20

*Fanucchi & Limi Farms v. United Agri Prods.*
414 F.3d 1075 (9th Cir. 2005)....................12

*Fifty-Six Hope Rd. v. Jammin Java Corp.*
2016 WL 9223890 (C.D. Cal. Dec. 8, 2016)....................19

*Forever 21, Inc. v. Seven Lions Inc.*
2012 WL 12888694 (C.D. Cal. Oct. 18, 2012)....................5

*Grindstone Indian Rancheria v. Olliff*
2018 WL 3460207 (E.D. Cal. July 16, 2018)....................9

*Hahn v. Mirda*
147 Cal. App. 4th 740 (2007)....................18, 19

*Hall v. Marriott Int'l Inc.*
2020 WL 4727069 (S.D. Cal. Aug. 14, 2020)....................16

*Henley Fin., Ltd v. Goyette & Assocs., Inc.*
2022 WL 597698 (E.D. Cal. Feb. 28, 2022)....................17

*Herbalife Int'l of Am., Inc. v. E. Computer Exch., Inc.*
2024 WL 1158344 (C.D. Cal. Mar. 18, 2024)....................12

*Howey v. United States*
481 F.2d 1187 (9th Cir. 1973)....................6

*Khoja v. Orexigen Therapeutics, Inc.*
899 F.3d 988 (9th Cir. 2018)....................6, 8

*National Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Services Group, Inc.*
171 Cal. App. 4th 35 (2009)....................17

*Neilson v. Union Bank of Cal., N.A.*
290 F. Supp. 2d 1101 (C.D. Cal. 2003)....................19

*Oberding v. Travel Plan, Inc.*
218 Cal. App. 2d 796 (1963)....................11

*Owners Ins. Co. v. Sidener*
649 F. Supp. 3d 1321 (M.D. Ga. 2022)....................6

*Res Exhibit Servs., LLC v. LNW Gaming, Inc.*
2023 WL 6261057 (D. Nev. Sept. 25, 2023)....................19

*Rivera v. Wells Fargo Bank, N.A.*
2019 WL 6797246 (C.D. Cal. June 19, 2019)....................14

*Roche v. Bank of Am., Nat. Ass'n*
2013 WL 3450016 (S.D. Cal. July 9, 2013)....................11

*Salazar v. Interland, Inc.*
152 Cal. App. 4th 1031 (2007)....................18

*Sherwin-Williams Co. v. JB Collision Servs., Inc.*
2014 WL 5112057 (S.D. Cal. Oct. 10, 2014) .... 15

*Switzer v. Wood*
35 Cal. App. 5th 116 (2019) .... 16

*Trunov v. Rusanoff*
2012 WL 6115608 (N.D. Cal. Dec. 10, 2012) .... 13

*Universal Ent. Corp. v. Aruze Gaming Am., Inc.*
2020 WL 2840153 (D. Nev. May 30, 2020) .... 19

*Veliz v. Cintas Corp.*
2004 WL 7336951 (N.D. Cal. June 29, 2004), *aff'd sub nom. Veliz v. Abney*, 181 F. App'x 621 (9th Cir. 2006) .... 9

*Ward v. Taggart*
51 Cal. 2d 736 (1959) .... 18

*Whittier* v. *Home Savings Bank*
161 Cal. 311 (1911) .... 11

Statutes

Cal. Bus. & Prof. Code § 10131(a) .... 18

Cal. Bus. & Prof. Code § 10176 .... 18

Cal. Civ. Code § 1698 .... 9, 10, 11

Cal. Civ. Code § 1714 .... 17

Other Authorities

Fed. R. Civ. P. 8(a) .... 8

Fed. R. Civ. P. 8(d)(3) .... 12

Fed. R. Civ. P. 13(h) .... 19, 20

Fed. R. Civ. P. 15(a) .... 6, 20

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This case concerns Fundamentum Health, Inc.'s ("Fundamentum") proposed acquisition of SDI Labs, Inc. ("SDI")—which never materialized—and the various parties that improperly distributed and/or retained millions of dollars Fundamentum placed into escrow pending the close of the sale. Fundamentum now seeks to recoup its $2,992,000.00 escrow deposit by way of numerous counterclaims ("Counterclaim") against these parties, namely, SDI, the escrow agent ("Wicker"), and International Business Investment, Inc. dba Manhattan Biz ("Manhattan Biz").

Manhattan Biz, by and through its sole officer and director, Sasa Milosevic ("Milsoevic"), acted as the broker for the proposed acquisition, was a party to the escrow agreement ("Escrow Agreement"), and was directly involved in the negotiations between the parties. Although Manhattan Biz knew the parties had conditioned escrow distribution on closing (as is typical of any transaction), and repeatedly confirmed its understanding of this precondition, Manhattan Biz nevertheless accepted, retained, and concealed its receipt of $210,000.00 from Fundamentum's escrow deposit for months while negotiations carried on (and ultimately failed). Indeed, it was not until SDI unilaterally terminated negotiations, and Fundamentum demanded the rightful return of its deposit, that Fundamentum first learned of these unauthorized distributions. Manhattan Biz (and each of the other Counter-Defendants) have refused to return these funds despite having no legal right to them.

Seeking to shirk its contractual obligations to Fundamentum and its independent duties as a licensed broker, Manhattan Biz moves to dismiss the Counterclaim. Because Manhattan Biz's motion to dismiss ("Motion") is premised entirely on extraneous evidence which has no bearing on Fundamentum's well-pleaded allegations, the Motion should be denied.

The Motion relies almost exclusively on an extraneous document (a Docusign certificate), which Manhattan Biz contends is fatal to Fundamentum's counterclaims. Specifically, Manhattan Biz argues that Fundamentum has failed to state a counterclaim for breach of contract because the Escrow Agreement (which explicitly references the parties' prior agreement governing the timing of closing and distribution, but is otherwise silent as to these terms) could not have been "modified" based on the purported timeline it was Docusigned. At the same time, Manhattan Biz argues that Fundamentum has failed to state quasi-contract and other tort counterclaims *because* there is a written Escrow Agreement, even though the Escrow Agreement does not contain any terms which would preclude these theories of recovery.

Even if the Court were to consider Manhattan Biz's extraneous document on a motion to dismiss, the Motion would fare no better, because the document only introduces factual disputes which cannot be resolved at this stage of the proceeding. Case law is clear that if relief is possible under *any* set of well-pleaded factual allegations—regardless of the precise legal theory alleged, and *even if* certain theories conflict with one another—claims will be permitted to move forward. Fundamentum's factual allegations demonstrate that it has sufficiently pleaded each of its counterclaims, regardless of the precise legal theory that will ultimately prevail pending resolution of these disputed facts.

Therefore, regardless of whether the Court considers Manhattan Biz's extraneous evidence, the Motion should be denied just the same. Alternatively, should the Motion be granted for any reason, Fundamentum respectfully requests leave to amend for the reasons set forth herein.

## II. SUMMARY OF ALLEGATIONS

### A. Fundamentum's Allegations

Fundamentum and SDI executed a term sheet for Fundamentum's potential acquisition of SDI on November 30, 2022 ("Term Sheet"). (Dkt. No. 36-1 ¶ 155.)

Although Milosevic was not a party to the Term Sheet, he was aware of its provisions—namely, [redacted]. (*See* Dkt. No. 36-2 at 1 ([redacted]); Dkt. No. 36-1 ¶ 159 [redacted]); *see also id.* ¶¶ 161, 168.)

On January 9, 2023, Shelton Edward Wicker, Esq. ("Wicker") and Milosevic circulated the Escrow Agreement to the parties via email. (Dkt. No. 36-1 ¶ 163.) The Escrow Agreement expressly incorporated the Term Sheet at the outset, but was otherwise silent regarding the timing of distribution:

> Before close of escrow Fundamentum . . . ha[s] deposited or will deposit . . . Aggregate funds of Three Million Five-Hundred and Four Thousand ($3,504,000.00) Dollars ***pursuant to the parties TERM SHEET FOR THE POTENTIAL ACQUISITION OF SDI LABS, INC. dated November 30, 2022 and a Stock Purchase Agreement to be provided*** and any amendments thereto between Fundamentum Health (BUYER) and SDI Labs, Inc. (SELLER).
>
> ….
>
> All parties have been afforded adequate time and opportunity to read and understand these escrow instructions ***and all other documents referred to herein***.

(Dkt. No. 34, Ex. 3 at 1 (emphasis added).)

On January 10, 2023, the parties participated in a phone call to discuss the Escrow Agreement. (Dkt. No. 36-1 ¶ 168.) Milosevic promptly sent a follow up email to the parties stating: "[redacted]" (Dkt. No. 36-3) (emphasis added.) Milosevic's email also set forth, *in writing*, specific terms which were not expressly covered by the Escrow Agreement which were discussed during the parties' phone call:

[redacted]

(*Id.*) No parties objected to these written terms, and Fundamentum subsequently funded the escrow account with the additional funds set forth in Milosevic's January 10 email. (Dkt. No. 36-1 ¶ 194.) Although Wicker stated he would "[redacted]", he never did, suggesting that the parties understood the Escrow Agreement (as written, and further "clarified") to be an accurate reflection of the parties' agreement. (*Id.* ¶¶ 168-169; Dkt. No. 36-3.) Milosevic once again confirmed his understanding that closing was conditioned on an executed sales agreement when he contacted Huettenbach individually on January 31, 2023,[1] and informed him that he "talked" SDI into working on "the merger agreement alteration", rather than backing out of the deal. (Dkt. No. 36-1 ¶ 186, n.2.)

Although the transaction never closed, on February 2, 2023, Wicker distributed $210,000.00 of escrow funds to Manhattan Biz. (*Id.* ¶ 169.) Manhattan Biz accepted and retained these funds, in clear contravention of the parties' agreement. (*Id.* ¶ 174.)

Fundamentum brings seven counterclaims against Manhattan Biz, including breach of contract, tort counterclaims in the alternative, receipt of stolen property, professional negligence, and aiding and abetting breach of fiduciary duty.

**B. <u>Manhattan Biz's Motion to Dismiss</u>**

Manhattan Biz moves to dismiss all seven counterclaims, premised largely on a Docusign certificate ("Certificate") it argues is incorporated into the Counterclaim by reference. (Dkt. No 58-1 at 3.) Manhattan Biz does not address (1) the Escrow

[1] There is a typographical error in the Counterclaim regarding this date, which Fundamentum will correct in the event amendment is necessary.

Agreement's explicit reference to the Term Sheet, [redacted]; (2) that the Escrow Agreement does not set forth any conditions that conflict with the Term Sheet, but is simply silent regarding when distribution can occur; and (3) that Milosevic agreed, *in writing*, that closing would be conditioned on the parties executing a final sales agreement. (*See* Dkt. No. 36-1 ¶¶ 159, 168; Dkt, No. 36-3.)

Manhattan Biz next argues that Fundamentum is precluded from pleading quasi-contract and tort theories in the alternative, notwithstanding Manhattan Biz's position that the parties' January 10 agreement has no contractual significance. (*See* Dkt. No 58-1 at 21.) Manhattan Biz paradoxically argues that Fundamentum's counterclaims for receipt of stolen property, aiding and abetting, and professional negligence can only survive if Fundamentum sufficiently pleads a breach of contract counterclaim. (*See id.* at 18-19.) Finally, Manhattan Biz argues that Fundamentum is precluded from bringing its professional negligence counterclaim against new parties under Federal Rule of Civil Procedure 13(h), although it admits that there is no binding precedent on this issue. (*Id.* at 20-21.)

Manhattan Biz repeatedly argues that the Counterclaim should be dismissed based on technical defects in the pleading, but nevertheless requests that the Court dismiss the Counterclaim without leave to amend. (*See id.* at 21.)

## III. LEGAL STANDARD

"Dismissal pursuant to Rule 12(b)(6) is proper only where there is either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Forever 21, Inc. v. Seven Lions Inc*., 2012 WL 12888694, at *1 (C.D. Cal. Oct. 18, 2012). "However, the plaintiff need only set forth facts which support *any* theory of relief, and claims should not be dismissed merely because the plaintiff asserts the wrong legal theory." *Id.* (emphasis added) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

Finally, there is a "strong policy to permit the amending of pleadings" (*Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973)), and "[t]he [C]ourt should freely give leave when justice so requires" (Fed. R. Civ. P. 15(a)).

## IV. THE MOTION SHOULD BE DENIED.

### A. The Motion Relies Heavily on Extraneous Evidence That, Even if Considered, Does Not Warrant Dismissal of the Counterclaim.

The Motion is premised first and foremost on the Certificate, which Manhattan Biz argues is incorporated by reference into the Counterclaim. (Dkt. No 58-1 at 4-8.) Although Manhattan Biz asserts that "other courts" have concluded that Docusign certificates may by incorporated by reference, it cites only a single Georgia District Court case in support of its assertion. (*See* Dkt. No 58-1 at 6-7 (citing *Owners Ins. Co. v. Sidener*, 649 F. Supp. 3d 1321, 1330 n. 9 (M.D. Ga. 2022)). Significantly, the court in *Owners Ins.* reached this conclusion on a motion for summary judgment—not on a motion to dismiss. As explained by the 9th Circuit, with respect to a motion to dismiss:

> Submitting documents not mentioned in the complaint to create a defense is nothing more than another way of disputing the factual allegations in the complaint, but with a perverse added benefit: unless the district court converts the defendant's motion to dismiss into a motion for summary judgment, the plaintiff receives no opportunity to respond to the defendant's new version of the facts. Without that opportunity to respond, the defendant's newly-expanded version of the complaint — accepted as true at the pleading stage — can easily topple otherwise cognizable claims. Although the incorporation-by-reference doctrine is designed to prevent artful pleading by plaintiffs, the doctrine is not a tool for defendants to short-circuit the resolution of a well-pleaded claim.

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018).

Here, Manhattan Biz argues that the Certificate is properly incorporated because Fundamentum intentionally failed to attach a copy of the Docusigned agreement to the Counterclaim, and further argues that the timeline of execution defeats Fundamentum's counterclaims. This is incorrect on both fronts.

First, Fundamentum did not attach a copy of the Escrow Agreement because SDI had already attached a copy to SDI's complaint. Notably, none of the three versions of SDI's complaint attach the Certificate on which Manhattan Biz so heavily relies. (*See* Dkt. No. 1-1 at 64-65; Dkt. No. 22, Ex. 3; Dkt. No. 34, Ex. 3.) The Certificate purportedly shows that counsel and other Fundamentum personnel were copied on a January 10, 2023, email from Docusign, but they did not receive any further communications in connection with the agreement. (Dkt. No 58-2, Ex. A.) Felix Huettenbach ("Huettenbach") (the only person included on said copy) is no longer employed by Fundamentum. Fundamentum relied on the version of the Docusigned Escrow Agreement that was attached to SDI's complaint, which provides only that "[a]ll parties now agree to these Escrow Instructions dated January 9, 2023," and can neither admit nor deny the authenticity of the Certificate attached to Milosevic's declaration. (*See* Dkt. No. 34, Ex. 3 at 1.)

Second, assuming the Certificate is authentic, it only serves to introduce factual disputes that are inappropriate for resolution at this stage of the proceedings. Wicker and Milosevic emailed the Escrow Agreement to all parties on January 9, 2023. (Dkt. No. 36-3.) The Certificate indicates that Wicker then circulated the Escrow Agreement via Docusign on January 10, 2023. (Dkt. No. 58-2, Ex. A.) Milosevic Docusigned the Escrow Agreement approximately one hour later. (*Id.*) Approximately two and a half hours later, Milosevic sent an email to all parties clarifiying their agreement to condition closing on execution of a final sales agreement. (Dkt. No. 36-3.) Huettenbach then Docusigned the Escrow Agreement on January 25, 2023, while SDI's CEO Docusigned the Escrow Agreement on February 2, 2023, after Wicker resent the Escrow Agreement to SDI only. (Dkt. No. 58-2 at 6.)

It remains Fundamentum's understanding that Huettenbach signed the Escrow Agreement with an effective date of January 9, and that all parties understood the conditions discussed on January 10—and reduced in writing to all parties without

objection—were part of the Escrow Agreement. Accordingly, Manhattan Biz's introduction of the Certificate, at most, only demonstrates that there are factual disputes regarding when the Escrow Agreement took effect, as well as each parties' understanding and intent when they Docusigned the Escrow Agreement.[2] Therefore, the Certificate, offered solely to "to dispute facts stated in [Fundamentum's] wellpleaded" Counterclaim, should not be considered by the Court in deciding the Motion. *See Khoja*, 899 F.3d at 1003.

In the event the Court nevertheless considers the Certificate, this opposition addresses both the timeline of execution as alleged in the Counterclaim, as well as Manhattan Biz's alternative timeline. As set forth below, Fundamentum has alleged sufficient facts to support its counterclaims under both the legal theories explicitly alleged in the Counterclaim, as well as other cognizable theories in the alternative.

**B. Fundamentum Has Stated a Counterclaim for Breach of Contract.**

Each of Manhattan Biz's arguments regarding Fundamentum's breach of contract counterclaim center around Fundamentum's characterization of the parties' January 10 agreement as a "modification," and involve disputed facts which cannot be resolved at this stage of the proceedings. Accordingly, Manhattan Biz's motion to dismiss Fundamentum's second counterclaim for breach of contract should be denied.

It should be noted at the outset that Manhattan Biz once again applies the wrong standard in support of its Motion. (*See* Dkt. No. 58-1 at 12) (arguing that "Fundamentum cannot proceed based on an unalleged theory of the case".) This is incorrect. "Under Federal Rule of Civil Procedure 8(a), a complaint sufficiently raises a claim even if it points to the wrong legal theory or if it points to no legal theory whatsoever, as long as relief is possible under any set of facts consistent with

[2] If the Court concludes amendment is necessary at this stage to explicitly address these factual disputes, Fundamentum may seek additional relief, *e.g.*, recission due to unilateral mistake. *See* Cal. Civ. Code § 1698(b)(1).

the pleaded allegations." *Veliz v. Cintas Corp.,* 2004 WL 7336951, at *1 (N.D. Cal. June 29, 2004), *aff'd sub nom. Veliz v. Abney*, 181 F. App'x 621 (9th Cir. 2006); *cf. Grindstone Indian Rancheria v. Olliff*, 2018 WL 3460207, at *3 (E.D. Cal. July 16, 2018) (dismissing counterclaim <u>because it was asserted against the wrong parties</u>). In other words, it is the factual allegations in the Counterclaim—not Fundamentum's legal characterization therein—that govern the Court's inquiry. These factual allegations, which must be taken as true, sufficiently state a cognizable counterclaim for breach of contract under numerous legal theories.

As explained by the California Supreme Court, with regard to escrow instructions in particular:

> If the escrow instructions are in writing and the escrow holder accepts them or if the escrow holder prepares the instructions, offers to perform them, and the buyer and seller accept the offer, an action for failure to comply with the instructions is on a written contract. The contract may be 'in writing' . . . even though it was accepted orally or by an act other than signing.

*Amen v. Merced Cty. Title Co.*, 58 Cal. 2d 528, 532 (1962).

California Civil Code Section 1698 further provides that a contract in writing may be modified by another contract in writing, or by an oral agreement "to the extent that the ***oral agreement*** is executed by the parties." Civ. Code § 1698(a)-(b) (emphasis added). In addition, "rules of law concerning . . . independent collateral contracts" may still apply, even where there is a "no modification" provision in a written contract. *Id.* §1698(d). Where "conflicting inferences as to the parties' intent c[an] reasonably be drawn from the parties' course of conduct" surrounding an agreement, these inferences present "question[s] of fact appropriate for resolution by the jury." *See Am. Licorice Co. v. Total Sweeteners, Inc.*, 2013 WL 4396778, at *11 (N.D. Cal. Aug. 13, 2013).

Here, Fundamentum has alleged sufficient facts to show that the Escrow Agreement effectively incorporated the distribution timeline set forth in the Term Sheet, whether on its face, or as modified and/or supplemented on January 10.

Fundamentum alleges that Wicker prepared and circulated the Escrow Agreement on January 9, 2023 (Dkt. No. 36-3.) The Escrow Agreement refers to and incorporates the Term Sheet, but does not expressly restate the closing and distribution conditions set forth therein (and is indeed completely silent on these points). (Dkt. No. 36-1 ¶ 167-168; *see also* Dkt. No. 34, Ex. 3 ("All parties have been afforded adequate time and opportunity to read and understand these escrow instructions ***and all other documents referred to herein***.") The parties then held a phone call discussing the Escrow Agreement on January 10. (*Id.*) During the call, the parties discussed either a clarification, modification, or supplement to the Escrow Agreement, whereby Fundamentum would deposit additional funds into escrow and closing would be postponed pending final execution of the sales agreement ([redacted]). (*Id.*) Milosevic promptly sent an email to the parties confirming these terms in writing, which Wicker likewise acknowledged in a follow up email, and to which no party objected. (Dkt. No. 36-3 ([redacted]); *cf*. Dkt. No. 34, Ex. 3 ("Any amendments and/or supplements to these instructions must be made in writing.").) Fundamentum then provided the additional escrow funds [redacted]. (Dkt. No. 36-1 ¶ 194; Dkt. No 36-3.)

Although Wicker indicated that he would revise the Escrow Agreement "[redacted]", he never did, suggesting that the parties understood their January 10 agreement was effectively incorporated into the Escrow Agreement. (Dkt. No. 36-1 ¶ 169.) Thus, Fundamentum has alleged sufficient facts to show that the Escrow Agreement was either modified, supplemented, or simply "clarifi[ed" based on the parties' January 10 discussion and correspondence.

Manhattan Biz argues that, following the 1976 amendments to Civil Code Section 1698, an oral modification requires full performance by both parties. (Dkt.

No. 58-1 at 10.) This argument overstates the effect and interpretation of the 1976 amendments. Numerous courts have continued to enforce oral modifications based on performance by the promisor alone, citing authority which pre-dates the amendments. *See Roche v. Bank of Am., Nat. Ass'n*, 2013 WL 3450016, at *5 (S.D. Cal. July 9, 2013) (enforcing oral modification because "'[i]f there exists sufficient consideration for an oral modification agreement, then full performance by the promisee alone would suffice to render the agreement 'executed' within the meaning of section 1698[b].'") (citing *Raedeke v. Gibraltar Sav. & Loan Assn.*, 10 Cal. 3d 665, 673 (1974); *Ansanelli v. JP Morgan Chase Bank, N.A.*, 2011 WL 1134451, at *3 (N.D. Cal. Mar. 28, 2011) (same).) Thus, Fundamentum has sufficiently alleged that the oral agreement was executed within the meaning of Civil Code Section 1698(b), because Fundamentum alleges that it performed its part of the agreement. (Dkt. No. 36-1 ¶ 194.)

Alternatively, Fundamentum has pleaded sufficient facts demonstrating that the parties formed an independent collateral agreement (based on the same allegations above). Indeed, Milosevic himself characterized the parties' January 10 telephone conversation as an agreement, and subsequently reduced that agreement to writing. (*See* Dkt. No. 36-3) ([redacted].) In exchange, Fundamentum agreed to, and did, wire additional funds into escrow as consideration for the parties' agreement. (*Id.*) Neither the oral modification clause nor the integration clause restricts the enforceability of the collateral contract, because the Escrow Agreement is silent as to when distribution can occur. *See, e.g., Whittier* v. *Home Savings Bank*, 161 Cal. 311, 317 (1911) ("The rule that an agreement in writing supersedes all prior or contemporaneous oral negotiations . . . has no application to a collateral agreement upon which the instrument is silent, and which does not purport to affect the terms of the instrument."); *Oberding v. Travel Plan, Inc.*, 218 Cal. App. 2d 796, 798 (1963) ("[E]vidence of a prior collateral oral agreement may be introduced . . .

where it is not inconsistent with the terms of the written document even though it relates to the same subject matter").

Moreover, the Escrow Agreement provides that it can be amended or supplemented "in writing" and does not require that these supplements be executed by all parties. (Dkt. No. 34, Ex. 3.) Milosevic's January 10 email was in writing, was not objected to by any party, and was expressly acknowledged by Wicker. Even if the signature timestamps in the Certificate were relevant, it demonstrates only that the parties signed the Escrow Agreement understanding that their January 10 written correspondence was part of the Escrow Agreement. Thus, even if the Court were to consider Manhattan Biz's timeline regarding execution, the result is the same: Fundamentum has pleaded facts to state a counterclaim for breach of contract.[3]

**C. <u>Fundamentum Has Stated Counterclaims for Promissory Estoppel and Conversion in The Alternative.</u>**

Manhattan Biz further argues that Fundamentum "attempts to recast its breach of contract claim" as claims for promissory estoppel and conversion. (Dkt. No. 58-1 at 13.) As with each of its preceding arguments, Manhattan Biz once again misstates the relevant standard governing Fundamentum's pleading.

"A party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3); *see also Herbalife Int'l of Am., Inc. v. E. Computer Exch., Inc.*, 2024 WL 1158344, at *15 (C.D. Cal. Mar. 18, 2024) ("Modern pleading practice allows a party to plead promissory estoppel in

[3] Manhattan Biz argues that Fundamentum "never allege[s] estoppel or waiver" and thus cannot proceed on these theories. (Dkt. No. 58-1 at 12.) As these theories merely support Fundamentum's interpretation of the Escrow Agreement, it is not necessary for Fundamentum to affirmatively assert these theories as independent claims. *See, e.g., Fanucchi & Limi Farms v. United Agri Prods.*, 414 F.3d 1075, 1082 (9th Cir. 2005) (allowing complaint for breach of contract to proceed on a novation theory even though that theory had not been expressly pleaded, because notice pleading is all that is required in federal court).

the alternative to breach of contract based on the same facts."); *Com. Point Cap., Inc. v. First Data Corp.,* 2019 WL 7020057, at *6 (S.D. Cal. Dec. 20, 2019) (permitting claim for conversion in the alternative to the breach of contract claim.) Accordingly, should the factfinder conclude that the parties' January 10 agreement is not incorporated into the Escrow Agreement for any reason, Fundamentum alleges two tort theories in the alternative, as expressly permitted under Rule 8.

Manhattan Biz argues that Fundamentum is precluded from bringing a promissory estoppel claim because "there is no dispute that a valid contract exists that covers the subject matter of the escrow deposit." (Dkt. No. 58-1 at 15.) While it may be true that there is no dispute the Escrow Agreement exists, there is certainly a dispute regarding the precise contours of its terms, including the date of execution and the significance of the parties' January 10 discussion and correspondence. *See Trunov v. Rusanoff,* 2012 WL 6115608, at *3 (N.D. Cal. Dec. 10, 2012) (promissory estoppel properly pleaded in the alternative to breach of contract because "[a]lthough the parties allege that there was an oral contract, the terms of that contract are in dispute.") In addition, Fundamentum pleads that the Escrow Agreement, at least on its face, is silent regarding when distribution can occur and does not expressly define "closing". (Dkt. No. 36-1 ¶ 167.) Therefore, contrary to Manhattan Biz's argument, the January 9, 2023 Escrow Agreement does not necessarily "'govern[] the same subject matter as the alleged promise.'" (*See* Dkt. No 58-1 at 14 (citing *Horne v. Harley Davidson, Inc.*, 660 F. Supp. 2d 1152, 1163 (C.D. Cal. 2009).)

Manhattan Biz further argues that Fundamentum cannot plead promissory estoppel because Fundamentum has expressly alleged it provided "'new consideration' in exchange for Manhattan Biz's supposed promise about the escrow account—namely, additional escrow funds." (Dkt No. 58-1 at 15-16.) As with Fundamentum's breach of contract counterclaim, Fundamentum's own legal characterization of the funds as consideration (alleged elsewhere in the

Counterclaim, in connection with its primary claim for breach of contract) is irrelevant. *See Citizens of Human., LLC v. LAB sarl,* 2013 WL 12129393, at *13 (C.D. Cal. Apr. 22, 2013) ("[Counter-defendant] cites no authority for the proposition that lack of consideration is an element of promissory estoppel that a plaintiff must affirmatively plead …. [Counter-claimant] has alleged a promise that may serve as a substitute for consideration; [] if further factual development reveals no evidence of a contract, [Counter-defendant] can rely on that promise to assert a promissory estoppel claim.")

Here, Fundamentum alleges that the parties agreed that closing would be conditioned on the execution of a final sales agreement. (Dkt. No. 36-1 ¶ 168.) Implied in that agreement was a promise ***not to*** retain escrow funds which were distributed without Fundamentum's authorization, because the sales agreement had not yet been executed. *See Copeland v. Baskin Robbins U.S.A.*, 96 Cal. App. 4th 1251, 1262 (2002) (a promissory estoppel claim may be based on an "implied promise"). Fundamentum detrimentally relied on that promise by funding the escrow account before any revised instructions were circulated, with the reasonable reliance that Milosevic would comply with his implied promise not to retain an unauthorized distribution.[4] *See Rivera v. Wells Fargo Bank, N.A.*, 2019 WL 6797246, at *7 (C.D. Cal. June 19, 2019) (noting that opening an escrow account can constitute detrimental reliance). Fundamentum further relied on this implied promise by not terminating the Escrow Agreement, or, alternatively, by not requesting that the January 10 agreement be memorialized into the existing January

[4] Manhattan Biz insinuates that because it was a not party to the Term Sheet, it could not be bound by its provisions. (Dkt. No. 58-1 at 1-2.) Fundamentum disputes this point because certain terms were adopted by the parties and both Milosevic and Wicker were at least aware that the Term Sheet governed the transaction as between buyer and seller, and aware of its provisions regarding closing and distribution. (Dkt. No. 36-1 ¶¶ 167-168.) Their promise *not* to circumvent these terms is further evidenced by each of their January 10 representations. Indeed, as with any other transaction, it would be wholly illogical to distribute post-closing escrow funds before a transaction had actually closed.

9th version of the agreement, as opposed to relying on the incorporation of the written January 10 email agreement. *See Sherwin-Williams Co. v. JB Collision Servs., Inc.*, 2014 WL 5112057, at *8 (S.D. Cal. Oct. 10, 2014) (detrimental reliance properly pleaded where counterclaimant entered into and subsequently failed to terminate contract and mitigate damages).[5]

As to conversion, Manhattan Biz argues that "'[a] plaintiff may not ordinarily recover for the tort of conversion 'for the breach of duties that merely restate contractual obligations.'" (Dkt. No. 58-1 at 16.) At the same time, Manhattan Biz admits that "courts have expressly permitted a plaintiff to proceed on both a breach of contract claim and a conversion claim [where] there was a possibility that the contract at issue did not cover the alleged misconduct about which the plaintiff was complaining." (*Id.* at 22.) That is precisely the situation here.

A contractual duty and an independent legal duty are not mutually exclusive. Therefore, even if the factfinder concludes that Manhattan Biz was not contractually obligated to return the funds, Fundamentum may still argue that Manhattan Biz was nevertheless aware that Fundamentum had not authorized their distribution, in light of Fundamentum's collateral agreement with SDI. *See Chase Inv. Servs. Corp.*, 748 F. Supp. 2d 1145 at 1179, 1181 (finding the plaintiff retained its ownership interest while its property was held in escrow and that the defendant was liable for conversion by making a transfer without the plaintiff's consent). As succinctly stated by the California District Court:

[5] Even if the Court finds that the Certificate is incorporated into the Counterclaim, it does not change Fundamentum's reliance on the parties' agreement and written promises—whether by letting the January 9 Escrow Agreement remain unrevised or by later signing the January 9 Escrow Agreement. *See Sherwin-Williams*, 2014 WL 5112057, at *8.

> [I]t may have been a breach of contract for [plaintiff] to charge [defendant] for merchant accounts it repeatedly asked [defendant] to close. []. Alternatively, it may be that the agreement did not require [defendant] to close the accounts. If so, it may also be true that [defendant] retained an independent legal duty not to retain ownership of money it knew resulted from closed accounts. Thus a plausible claim for conversion remains in the alternative to the breach of contract claim.

*Com. Point*, 2019 WL 7020057, at *6; *see also Hall v. Marriott Int'l Inc.*, 2020 WL 4727069, at *13 (S.D. Cal. Aug. 14, 2020) ("plaintiff may 'nonetheless . . . seek restitution on a quasi-contract theory 'where the defendant obtained a benefit from the plaintiff by . . . conversion[] or similar conduct.'") (citation omitted).

Fundamentum has alleged sufficient facts in support of its promissory estoppel and conversion counterclaims in the alternative to its breach of contract claim. Therefore, Manhattan Biz's motion to dismiss these counterclaims fails.

**D. Fundamentum Has Stated a Counterclaim for Receipt of Stolen Property.**

Manhattan Biz next argues that "Fundamentum cannot proceed on a claim that Manhattan Biz converted (*i.e.*, stole) the escrow deposit because that deposit was governed by the parties' Escrow Agreement." (Dkt. No. 58-1 at 17-18.) This argument misses the mark for the same reasons set forth above—namely, that both a breach of contract claim and a Section 496 claim may proceed where there is a possibility that the contract claim does not cover the alleged misconduct.

"A violation of section 496(a) may, by its own terms, relate to property that has been stolen or that has been obtained in any manner constituting theft or extortion". *Switzer v. Wood*, 35 Cal. App. 5th 116, 126 (2019) (quotation marks and citation omitted). "Theft" includes, *inter alia*, taking the personal property of another, or fraudulently appropriating property which has been entrusted to him or her. *See Bell v. Feibush*, 212 Cal. App. 4th 1041, 1048 (2013). "[S]ection 496, subdivision (a) may be violated in either of two ways: (1) by . . . receiving any property that has been stolen or (2) by conceal[ing] . . . withhold[ing] or aid[ing] in

concealing . . . or withholding any property from the owner." *Allure Labs, Inc. v. Markushevska*, 606 B.R. 51, 60 (N.D. Cal. 2019) (quoting Cal. Pen. Code § 496). Accordingly, while a claim for receipt of stolen property may *overlap* with a breach of contract claim (and both claims may be successful), the existence of a contract is not a necessary pre-condition for liability.

Here, Fundamentum alleges it funded escrow, but did not authorize escrow distribution at that time. (Dkt. No. 36-1 ¶¶ 174, 194.) As such, Fundamentum "retained its ownership rights" over the funds. *See Henley Fin., Ltd v. Goyette & Assocs., Inc.,* 2022 WL 597698, at *8 (E.D. Cal. Feb. 28, 2022) ("Though the eventual transfer of funds . . . would indeed be consistent with the parties' intentions, it was Plaintiff, not [the escrow agent], that retained the right to choose when the transfer would occur (by way of the escrow instructions), if at all.") Although both Wicker and Milosevic were aware that Fundamentum had *not* authorized distribution, Wicker nevertheless distributed the funds, and Milosevic accepted and retained those funds. (Dkt. No. 36-1 ¶ 174; Dkt. No. 36-3.) Therefore, Manhattan Biz's motion to dismiss this counterclaim should be denied.

### E. <u>Fundamentum Has Stated a Counterclaim For Aiding and Abetting Breach of Fiduciary Duty and Professional Negligence.</u>

Manhattan Biz moves to dismiss Fundamentum's last two counterclaims based on Fundamentum's characterization of the Escrow Agreement "as modified". (Dkt. No. 58-1 at 19-20.) This argument (a variation of its prior arguments), likewise fails.

Manhattan Biz does not cite *any* authority holding that an escrow agent and a broker may only incur tort liability where their obligations arise from a formal contract. Nor can it. "A duty may arise through statute, contract, or the relationship of the parties." *Nation'l Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Serv. Grp., Inc.*, 171 Cal. App. 4th 35, 45 (2009); *see also* Cal. Civ. Code § 1714 ("Everyone is responsible, not only for the result of his or her willful acts,

but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person….")

Here, although Fundamentum specifically alleges that both Wicker and Milosevic's duties to Fundamentum arose from the parties' contractual relationship, their formal contract is not the only potential source of a duty. An escrow agent holds a fiduciary duty to its principals as a matter of law, and "must comply strictly with the instructions of the parties", even where those instructions are not reduced to a formal contract. *See Amen*, 58 Cal. 2d 528 at 531. Manhattan Biz, as a licensed real estate broker[6] owed certain statutory duties to *both* parties, as well as the common law duty to "use such skill, prudence, and diligence as other members of his profession commonly possess and exercise." *See Hahn v. Mirda*, 147 Cal. App. 4th 740, 746 (2007); *see also* Cal. Bus. & Prof. Code § 10176 (a licensed real estate broker may not "tak[e] . . . any secret or undisclosed amount of compensation," or "fail[] . . . to reveal ***to the buyer or seller contracting with the licensee*** the full amount of the licensee's compensation . . . prior to or coincident with the signing of an agreement evidencing the meeting of the minds of the contracting parties, ***regardless of the form of the agreement***, whether evidenced by documents in an escrow or by any other or different procedure.") (emphasis added); *Ward v. Taggart*, 51 Cal. 2d 736, 741 (1959) ("[A] real estate broker . . . ha[s] the duty to be honest and truthful in his dealings.")

Therefore, because Fundamentum has alleged that Manhattan Biz knowingly retained and concealed escrow funds which were improperly distributed by the parties' escrow agent, in direct contravention of Fundamentum's instructions and

---

[6] "The definition of 'real estate broker' in Cal. Bus. & Prof. Code, § 10131, subd. (a), includes a person who, for a compensation or in expectation of a compensation . . . obtains listings of, or negotiates the purchase, sale or exchange of a business opportunity." *Salazar v. Interland, Inc.*, 152 Cal. App. 4th 1031, 1042 (2007); (*cf.* Dkt. No. 36-3) (Milosevic's represented in his email signature that he was "a certified business broker").)

Manhattan Biz's explicit recognition thereof, Fundamentum has stated counterclaims for both aiding and abetting breach of fiduciary duty and professional negligence. *See, e.g.*, *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1120 (C.D. Cal. 2003) ("Generally, courts have found pleadings [for aiding and abetting breach of fiduciary] sufficient if they allege generally that defendants had actual knowledge of a specific primary violation."); *Hahn*, 147 Cal. App. 4th at 740, (professional negligence may be alleged in general terms).

Manhattan Biz separately argues that Rule 13(h) precludes Fundamentum's professional negligence counterclaim, "[a]lthough there is admittedly no binding precedent on the issue." (Dkt. No 58-1at 20-21.) The professional negligence counterclaim is "anchored" to the other counterclaims in this action in that it arises from a common nucleus of facts as every other counterclaim. (*See* Dkt. No. 36-1 ¶¶ 192-240.) Therefore, the Court can and should exercise its discretion to permit joinder of the professional negligence counterclaim against Manhattan Biz and Wicker.[7] *See, e.g., Fifty-Six Hope Rd. v. Jammin Java Corp.*, 2016 WL 9223890, at *10 (C.D. Cal. Dec. 8, 2016) (permitting joinder of breach of fiduciary duty claim against nonparty alone where counterclaimant alleged conspiracy against all counter-defendants in the same pleading); *Universal Ent. Corp. v. Aruze Gaming Am., Inc.,* 2020 WL 2840153, at *16 (D. Nev. May 30, 2020) (permitting joinder of civil conspiracy claim against nonparty which arose from the same common nucleus of operative fact as the anchor claim); *Res Exhibit Servs., LLC v. LNW Gaming, Inc.*, 2023 WL 6261057, at *9 (D. Nev. Sept. 25, 2023) (permitting joiner of counterclaim against nonparties only because "Rule 13(h) is intended, in part, to promote the disposition of an entire matter arising from a single nucleus of facts.")

[7] It should also be noted that, because Wicker filed an Answer and Counterclaim against both Fundamentum and SDI *before* Manhattan Biz filed the Motion, Wicker is no longer a "non-party." (*See* Dkt. No. 54.)

## V. <u>IF THE COURT GRANTS THE MOTION FOR ANY REASON, FUNDAMENTUM SHOULD BE GRANTED LEAVE TO AMEND.</u>

Finally, Manhattan Biz argues that the Counterclaim "should be dismissed *with prejudice*", because "[t]here are no additional facts that could be alleged 'consistent with the challenged pleading'". (*See* Dkt. No. 58-1 at 21.) This is false. The precise timing that the Escrow Agreement was Docusigned by each party has no bearing on whether the parties intended and understood that the conditions set forth in the Term Sheet (as discussed and reduced to writing on January 10) were incorporated into the Escrow Agreement, whether by reference, modification, supplement, collateral agreement, or equitable principles. Nor does it have any bearing on Manhattan Biz's independent duties to the parties as a licensed broker, who was intimately involved in the parties' negotiations and aware of the restrictions governing both closing and distribution, and his independent statutory duties not to retain stolen property. However, if necessary, Fundamentum could amend its counterclaims to lay out the claims and theories extensively detailed herein.

"[T]here exists a *presumption* under Rule 15(a) in favor of granting leave to amend", which should be applied with "applied with extreme liberality". *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (quotation marks and citations omitted). Given that SDI was previously allowed to amend his complaint multiple times following Fundamentum's two successful motions to dismiss, justice requires that Fundamentum likewise be granted leave to amend should the Court conclude that the Counterclaim does not sufficiently reflect the arguments set forth herein.

## VI. <u>CONCLUSION</u>

Fundamentum respectfully requests that the Court deny the Motion in its entirety. Should the Court grant any part of the Motion, Fundamentum respectfully

requests leave to amend its Counterclaim.

Dated: May 9, 2024

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By: */s/ Juthamas J. Suwatanapongched*

DANIELLE VRABIE
JUTHAMAS J. SUWATANAPONGCHED
TARYN Q. MCPHERSON

Attorneys for Defendant/Counter-Claimant
FUNDAMENTUM HEALTH, INC.

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant and Counter-Claimant Fundamentum Health, Inc. certifies that this brief contains 6,998 words, which complies with the word limit of L.R. 11-6.1.

Dated: May 9, 2024

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By: */s/ Juthamas J. Suwatanapongched*

DANIELLE VRABIE (*pro hac vice*)
JUTHAMAS J. SUWATANAPONGCHED
TARYN Q. MCPHERSON

Attorneys for Defendant/Counter-Claimant
FUNDAMENTUM HEALTH, INC.